Alec Karakatsanis (*pro hac vice* application forthcoming)
(DC Bar No. 999294)
Olevia Boykin
(TX Bar No. 24105518)
Alexandria Twinem (*pro hac vice* application forthcoming)
(DC Bar No. 1644851)
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, DC 20009
alec@civilrightscorps.org
olevia@civilrightscorps.org
alexandria@civilrightscorps.org
(202) 670-4809

Adam Mueller
David Kaplan
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, Colorado 80203
amueller@hmflaw.com
dkaplan@hmflaw.com
(303) 831-7364

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-2585

KENNETH GLAD,

      Petitioner,

v.

BILL ELDER, in his official capacity as EL PASO COUNTY SHERIFF,

      Respondent.

---

## MEMORADUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS

---

# TABLE OF CONTENTS

I.   **Introduction** ................................................................................................. 1

II.  **Facts** ............................................................................................................. 2

III. **Standard of Review** ................................................................................. 6

IV. **Argument** .................................................................................................... 7

    A. An unattainable financial condition of release is an order of detention ...................... 8

    B. Orders of pretrial detention must be based on a substantive finding that detention is necessary because alternatives are insufficient ................................................................ 9

    C. The trial court failed to provide the procedural safeguards necessary to have confidence in the pretrial detention decision .................................................................... 13

       1.    Orders of detention must meet the requirements of procedural due process .. 13

       2.    Most of the required safeguards are undisputed ................................................... 14

       3.    If the government seeks to enter an order of preventive pretrial detention, it must provide an adversarial hearing, proof by clear and convincing evidence, and findings on the record with individualized, case-specific reasons showing why detention is necessary ..................................................................................................... 15

    D. Mr. Glad's detention is unlawful and must be remedied with an order of habeas corpus requiring those procedures take place or he be released ..................................... 21

V.   **Conclusion** ................................................................................................. 22

## TABLE OF AUTHORITIES

<u>Cases</u>

*Addington v. Texas*, 441 U.S. 418 (1979) ......................................................... 18, 19, 22

*Aime v. Com.*, 611 N.E.2d 204 (Mass. 1993).............................................................. 21

*Atkins v. Michigan*, 644 F.2d 543 (6th Cir. 1981) ........................................................ 9

*Bearden v. Georgia*, 461 U.S. 600 (1983) ................................................................. 13

*Brangan v. Commonwealth*, 80 N.E.3d 949 (Mass. 2017) .................................... 11, 15

*Brill v. Gurich*, 965 P.2d 404 (Okla. 1998) ............................................................... 21

*Buffin v. City & Cty. of San Francisco*, No. 15-CV-04959-YGR, 2018 WL 424362 (N.D. Cal. Jan. 16, 2018) .................................................................................................... 13

*Caliste v. Cantrell*, 329 F. Supp. 3d 296 (E.D. La. 2018), *aff'd*, No. 18-30954, 2019 WL 4072068 (5th Cir. Aug. 29, 2019) .............................................................. 11, 17, 23

*Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261 (1990)................................ 19

*Dixon v. City of St. Louis*, No. 4:19-CV-0112-AGF, 2019 WL 2437026 (E.D. Mo. June 11, 2019) .................................................................................................. 21, 23

*Foucha v. Louisiana*, 504 U.S. 71 (1992).............................................................. 14, 20

*Frazier v. Jordan*, 457 F.2d 726 (5th Cir. 1972) ....................................................... 13

*Goldberg v. Kelly*, 397 U.S. 254 (1970) ................................................................... 18

*In re Humphrey*, 228 Cal. Rptr. 3d 513 (Ct. App. 2018).................................. 15, 21, 23

*Kleinbart v. United States*, 604 A.2d 861 (D.C. 1992).............................................. 22

*Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) .................................. 15, 21

*Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015)....................................................... 22

*Lynch v. United States*, 557 A.2d 580 (D.C. 1989) .................................................... 21

*Martinez v. Caldwell*, 644 F.3d 238 (5th Cir. 2011)...................................................... 9

*Mathews v. Eldridge*, 424 U.S. 319 (1976)........................................................... 17, 19

*Mendenhall v. Sweat*, 158 So. 280 (Fla. 1934) ......................................................... 11

*Mendonza v. Com.*, 673 N.E.2d 22 (Mass. 1996) ..................................................... 21

*ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018)........................... 10, 13, 16, 17

*ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d 1052 (S.D. Tex. 2017), *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018), and *aff'd as modified sub nom. ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018) .................................................................................. 5, 11, 15

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ................................................................ 23

*Phillips v. Court of Common Pleas, Hamilton County, Ohio*, 668 F.3d 804 (6th Cir. 2012)......... 9

*Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) .............................................. 13, 14

*Reem v. Hennessy*, No. 17-CV-06628-CRB, 2017 WL 6765247 (N.D. Cal. Nov. 29, 2017) 15, 24

*Santosky v. Kramer*, 455 U.S. 745 (1982) ........................................................... 20, 22

*Simpson v. Miller*, 387 P.3d 1270 (Ariz. 2017) ........................................................ 15

*Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) ....................................................... 22

*State v. Brown*, 338 P.3d 1276 (N.M. 2014)............................................................. 11

*State v. Butler*, No. 2011–K–0879, 2011 WL 12678268 (La. App. 4th Cir. July 28, 2011), *writ not considered*, 75 So. 3d 442 (La. 2011) .............................................................................. 21

*State v. Ingram*, 165 A.3d 797 (N.J. 2017); ............................................................................... 21

*Stow v. Murashige*, 389 F.3d 880 (9th Cir. 2004) ...................................................................... 9

*Strickland v. Washington*, 466 U.S. 668 (1984) ........................................................................ 23

*Swarthout v. Cooke*, 562 U.S. 216 (2011) ................................................................................. 16

*Tate v. Short*, 401 U.S. 395 (1971) ............................................................................................ 13

*Turner v. Rogers*, 564 U.S. 431 (2011) ...................................................................................... 17

*United States v. Accetturo*, 783 F.2d 382 (3d Cir. 1986) ........................................................... 24

*United States v. Acevedo-Ramos*, 755 F.2d 203 (1st Cir. 1985) ............................................... 24

*United States v. LaFontaine*, 210 F.3d 125 (2d Cir. 2000) ....................................................... 24

*United States v. Leathers*, 412 F.2d 169 (D.C. Cir. 1969) ........................................................ 11

*United States v. Mantecon-Zayas*, 949 F.2d 548 (1st Cir. 1991) .............................................. 11

*United States v. Neal*, 679 F.3d 737 (8th Cir. 2012) ................................................................. 14

*United States v. Salerno*, 481 U.S. 739 (1987) ................................................................... passim

*United States v. Teague*, 953 F.2d 1525 (11th Cir. 1992). ........................................................ 23

*Walck v. Edmondson*, 472 F.3d 1227 (10th Cir. 2007) ............................................................... 9

*Washington v. Harper*, 494 U.S. 210 (1990) ................................................................ 10, 12, 16

*Wheeler v. State*, 864 A.2d 1058 (Md. App. 2005) ................................................................... 21

*White v. Lambert*, 370 F.3d 1002 (9th Cir. 2004) ...................................................................... 9

*Williams v. Illinois*, 399 U.S. 235 (1970) ........................................................................... 12, 13

*Youngberg v. Romeo*, 457 U.S. 307 (1982) ................................................................................ 14

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ................................................................................... 14

## Statutes

28 U.S.C. § 2241 .......................................................................................................................... 9

28 U.S.C. § 2254 .......................................................................................................................... 9

## I.      Introduction

Petitioner Kenneth Glad is in an El Paso County jail cell. He has not been convicted of a crime. If he could pay $300,000, or even a fraction of that amount, he would be released. The unaffordable condition of pretrial release set in his case is a de facto order of pretrial detention. But the State of Colorado has not complied with the substantive and procedural requirements for entering an order of pretrial detention. To the contrary: the prosecutor in this case *declined* to seek a no-bond hold in this case, instead asking that Mr. Glad be given an elevated amount of financial bond. Mr. Glad has not been given a "proof evident/presumption great" hearing. Mr. Glad is therefore being jailed in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. He has already spent six months detained in jail awaiting trial. And, given that his trial is set for December 2020, he will be jailed for at least an additional three months absent this Honorable Court's intervention.

The irreparable harm caused by these constitutional violations cannot be overstated: Mr. Glad is trapped in jail—a hotbed for transmission of disease—during the outbreak the highly contagious and deadly coronavirus solely because he is too poor to pay the cost of his release. His presence in jail is not only unlawful but also patently unreasonable, and now imperils both his and public's health.

This case presents one question: Can a presumptively innocent person be ordered detained until trial without a finding by clear and convincing evidence that detention is required to serve the government's interests? Mr. Glad respectfully petitions for a writ of habeas corpus ordering his release unless the state provides forthwith a thorough adversarial hearing that complies with the requirements for preventive pretrial detention required by the U.S. Constitution.  Under federal law, regulatory detention of a presumptively innocent person prior to trial may be lawful, but the

government must make findings by clear and convincing evidence about whether Mr. Glad is a danger to the community or risk of flight and, if so, whether there are alternative conditions of release short of incapacitation that could reasonably ensure his presence at trial and the safety of the community.

## II.     Facts

Kenneth Glad is 33 years old. He is a working, self-sufficient member of the Colorado Springs community. He has been a resident of Colorado Springs since April 2018. As soon as he arrived in Colorado Springs, he immediately began employment with RFI Commercial Inc. Carpet & Flooring. After working at RFI for six months, Mr. Glad obtained a position at Bears Towing, where he worked for a year and a half before his arrest, and where he is welcome to return to work if he is released. He has an active lease at his own residence of 6960 Peyote Way, a valid driver's license, and a means of transportation to court.

There is no question the allegations in this case are serious. On February 24, 2020, Mr. Glad was arrested and charged with first degree kidnapping, second degree kidnapping, and sexual assault. The underlying allegations involve a woman named Sofia Segura, who was walking to work on February 23, 2020 when she accepted a ride from a individual in a white van. Ms. Segura claims that the male driving ordered her to perform sexual acts on him while holding her at knifepoint. Ms. Segura claims she was able to break away from the driver and escape by rolling out of the vehicle. The vehicle left the area and the driver was not apprehended. On February 24, 2020, a detective conducted a search of police databases for calls for service involving a "white male masturbating." The detective found a separate call for service that involved a white car and an allegation of a male masturbating on December 19, 2019. Mr. Glad was the suspect in that case, which is currently pending. The detective then conducted a photo lineup using Mr. Glad's booking

photo from that case, and Ms. Segura said she was 80% sure the photo of Mr. Glad was the driver of the vehicle.

Following the signing of a no-bond arrest warrant, at Mr. Glad's initial appearance in the 20CR1194 case on February 25, 2020, the prosecution asked for Mr. Glad's bond to be set at an elevated amount. The Court set bond at $300,000. The prosecution did not request a no-bond hold at that time. As a result, Mr. Glad did not receive the due process protections afforded by a "proof evident/presumption great" hearing. Because Mr. Glad could not afford to pay $300,000 or even a fraction thereof, he remained jailed.

On April 13, 2020, Mr. Glad filed a motion for bond modification. In his motion, Mr. Glad explained that he could not afford to pay his bond and therefore requested a bond of $25,000 or another "more reasonable bond" than the $300,000 that had been set. He challenged the financial condition required for his release as operating as an order of detention because he could not pay it and argued that the state did not need to detain him pretrial because he was neither a flight risk nor did he pose an unacceptable risk to community safety. He further argued that the risk of exposure to COVID-19 in the jail, which is a hotbed for transmission of disease, made more severe the irreparable injury caused by his ongoing unlawful detention.

The court denied Mr. Glad's request orally during a hearing held on April 16, 2020. Ex. D (TR 4/16/20). The court stated that it believed that Mr. Glad's arguments "ma[d]e sense" and had "a lot of merit" but that the court could not reduce Mr. Glad's bond because the court is "not a legislator." *Id.* 5:9-22. The court concluded that Colorado's bond statute did not intend to ensure that someone charged with a crime was given either a no-bond hold or affordable bond and that "it's not for [the court] to test that legislation or to disagree with the legislation." *Id.* 8:8-9. When deciding to continue to detain Mr. Glad, the court focused on the public safety concerns posed by

the factual allegations in Mr. Glad's case as well as his prior conviction. The defense noted that the statutory presumption is for release and cited several non-monetary conditions the court could impose. The court did not address either of those issues. Nor did the court explain why a higher bond amount would serve the interest of public safety other than to keep Mr. Glad detained because he could not afford the amount. In issuing its ruling, the court did not state what argument or evidence it credited or what evidentiary standard it used. Nor did the court consider alternatives to detention even though Mr. Glad's attorney suggested that ankle monitoring and home confinement would be appropriate.[1] *Id.* 10:24–11:7.

The court's pronouncement thus lacked any explanation as to why no nonmonetary conditions of bond or pretrial supervision would reasonably ensure Mr. Glad's appearance in court or adequately protect the community. The district court did not mention any evidence or argument it had before it or reject Mr. Glad's support for his position that he did not pose a flight risk from the community in which he had extensive ties, including a stable job and home.  Nor did the court explain why $300,000 would assuage any particular risk, especially the risk of new criminal activity for which Mr. Glad could not even have that money forfeited. *See* C.R.S. § 16-4-104 (providing the only condition under which bond is forfeited is nonappearance; bond is not forfeited for committing new crimes).[2] In fact, despite knowing Mr. Glad would remain detained if the bond

---

[1] The court also cited the Chief Justice order regarding the COVID-19 pandemic and stated that "there remains a clear need to detain some criminal defendants in the interest of public safety." *Id.* 6:16–25.

[2] Indeed, payment of money bond cannot protect the community because it is only forfeited upon failure to appear, not for committing new crimes. *See also ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d 1052, 1109 (S.D. Tex. 2017), *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018), and *aff'd as modified sub nom. ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018) ("The evidence is that neither a secured nor unsecured bond is subject to forfeiture for new criminal activity…. "[R]equiring secured money bail provides no incentive to law-abiding behavior during pretrial release that is not equally provided by unsecured personal bonds.").

amount remained at $300,000, the court did not acknowledge at all that it was entering an order of pretrial detention.  Because Mr. Glad could not pay $300,000, Mr. Glad remained jailed.

On July 17, 2020, Mr. Glad appealed the district court's order to the Court of Appeals. Ex. L (Petition for Review of District Court's Bail Decision Filed Pursuant to C.R.S. § 16-4-204). Citing constitutional and statutory violations of his rights due to the $300,000 bond condition in his case, Mr. Glad argued that he was subjected to a de facto detention order that was imposed without the adversarial hearing and specific findings—particularly that pretrial detention is the least restrictive means of ensuring Mr. Glad's return to court and the safety of the community— that the constitution requires. *Id.* Mr. Glad contended that, absent these constitutionally-mandated procedures and findings, requiring $300,000 for his release was unlawful. *Id.*

On July 31, 2020, the Court of Appeals denied the petition for review. Ex. M (Court of Appeals Order). On August 16, 2020, Mr. Glad petitioned the Colorado Supreme Court for relief pursuant to Rule 21 citing these same constitutional violations. Ex. N. On August 18, 2020, the Colorado Supreme Court denied the petition. Ex. O.

If Mr. Glad could pay $300,000, he would walk out of the jail. He is in a jail cell today because he does not have enough money. Or perhaps he is in a jail cell today because some state actor believes he poses a threat to the community or an unreasonable risk of flight. But the Constitution requires that a person cannot be deprived of his pretrial liberty unless that belief is supported by evidence and made with specific factual findings on the record. Here, no such findings have ever been made by the court. The de facto detention order does not state that the court found detention to be the least restrictive means to reasonably ensure court appearance and community safety. Nor does it mention or explain any findings concerning whether any other alternative conditions or combinations of conditions (such as court reminder calls, case

management meetings, and telephone check-ins, or more restrictive alternatives such as home detention and electronic monitoring that the defendant himself proposed) could reasonably serve the state's interests.  This failure to make the substantive determination that the Constitution requires and the related failure to articulate the basis for that determination on the record warrant the important and immediate intervention of this Court.

### III.    Standard of Review

Petitioner brings this action under 28 U.S.C. § 2241 and the United States Constitution. Petitioner, therefore, need not satisfy the heightened requirements of 28 U.S.C. § 2254. Because he has not been convicted of a crime and is not in custody "pursuant to the judgment of a state court," Petitioner may bring this action under § 2241 and need not bring this action under § 2254, which governs habeas petitions challenging state criminal convictions. *Stow v. Murashige*, 389 F.3d 880, 886 (9th Cir. 2004) ("'[T]he general grant of habeas authority in § 2241 is available for challenges by a state prisoner who is not in custody pursuant to a state court judgment—for example, a defendant in pre-trial detention . . . .'" (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004)). Section 2254's heightened standards of review, therefore, do not apply to this case. *Id.* at 888; *Phillips v. Court of Common Pleas, Hamilton County, Ohio*, 668 F.3d 804, 809 (6th Cir. 2012); *Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011); *Walck v. Edmondson*, 472 F.3d 1227, 1234–35 (10th Cir. 2007); *Atkins v. Michigan*, 644 F.2d 543, 546 & n.1 (6th Cir. 1981). This Court, accordingly, reviews the legal determinations of the state courts and the constitutional adequacy of the procedures used to make them de novo. *Stow*, 389 F.3d at 888 ("The significance of th[e] determination [that § 2241 applies] is that . . . we can affirm the district court's [grant of habeas relief] . . . de novo . . . .").

## IV.    Argument

There are two principal constitutional problems with detaining Mr. Glad prior to trial simply because he cannot make a monetary payment: (1) jailing him solely because he cannot pay a sum of money without making a finding that he is able to pay it infringes a fundamental right solely on the basis of wealth in violation of the Equal Protection and Due Process Clauses; and (2) jailing Mr. Glad prior to trial because he cannot meet a financial condition deprives a presumptively innocent person of the fundamental right to pretrial liberty without complying with the substantive and procedural requirements for a valid order of detention under the Due Process Clause. These two substantive constitutional rights cannot be infringed unless the government satisfies strict scrutiny: the government must demonstrate that wealth-based pretrial detention is necessary—that is, that alternatives to detention are inadequate—to serve a compelling interest such as reasonably ensuring court appearance or community safety.  Thus, if requiring a person to make a monetary payment in exchange for release from detention, the government must make findings concerning the person's ability to pay.  If the person cannot pay the amount required, such that the condition of release will function as a de facto detention order, then the government must justify the order to pay unattainable bail in the same way that it justifies a transparent order of detention.

Here, the State of Colorado is detaining Mr. Glad for failing to pay a sum of money. However, it has not made the procedurally required finding that he is able to pay the sum and is willfully refusing to, or that jailing him outright would be permissible under the Due Process Clause because no alternatives exist to meet compelling government interests. Mr. Glad is therefore being detained in violation of his equal protection and due process rights. Given the

outbreak of COVID-19, the irreparable harm of these constitutional violations is even more imminent, requiring swift intervention by this Court.

### A. An unattainable financial condition of release is an order of detention

Courts across the country agree that requiring money bail in an amount that a defendant cannot afford is equivalent to ordering him detained pretrial. *State v. Brown*, 338 P.3d 1276, 1292 (N.M. 2014) ("Intentionally setting bail so high as to be unattainable is simply a less honest method of unlawfully denying bail altogether."); *ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d 1052, 1145 (S.D. Tex. 2017), *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018), *and aff'd as modified sub nom. ODonnell v. Harris Cty.*, 892 F.3d 147 (5th Cir. 2018) (holding that secured money bail set in an amount that an arrestee cannot afford is constitutionally equivalent to an order of detention); *United States v. Mantecon-Zayas*, 949 F.2d 548, 550 (1st Cir. 1991); *United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) ("the setting of bond unreachable because of its amount would be tantamount to setting no conditions at all"); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 310 (E.D. La. 2018), *aff'd*, No. 18-30954, 2019 WL 4072068 (5th Cir. Aug. 29, 2019) (acknowledging setting bail without inquiring into ability to pay and nonfinancial conditions of release causes unwarranted pretrial detention); *Brangan v. Commonwealth*, 80 N.E.3d 949, 963 (Mass. 2017) ("But where a judge sets bail in an amount so far beyond a defendant's ability to pay that it is likely to result in long-term pretrial detention, it is the functional equivalent of an order for pretrial detention, and the judge's decision must be evaluated in light of the same due process requirements applicable to such a deprivation of liberty."); *Mendenhall v. Sweat*, 158 So. 280,  281-82 (Fla. 1934) (applying an unaffordable bail is "tantamount to denying bail" outright)). This is because an unaffordable bail presents an "illusory choice." *Williams v. Illinois*, 399 U.S. 235, 242 (1970) (reasoning that an indigent defendant has only an "illusory choice" between jail and paying an

unaffordable fine). When the accused person cannot pay the money required for his release, jail is the only possible outcome.

Here, the court-ordered payment of $300,000 in exchange for Mr. Glad's release is the functional equivalent of an order of detention. Indeed, although the court did not make the required inquiry or findings, the court arguably knew Mr. Glad would not be able to pay $300,000: Mr. Glad repeatedly asserted he could not pay $300,000 for his release, and he has remained in jail for seven months notwithstanding an order of release. And it is standard practice in El Paso County to set high monetary conditions of release where the State seeks to detain the accused prior to trial.

### B.  Orders of pretrial detention must be based on a substantive finding that detention is necessary because alternatives are insufficient

A de facto order of detention is not per se unconstitutional, but the government must justify the order to pay unattainable money bail in the same way that it justifies a transparent order of detention. Here, the court failed to do so by not making a finding specific to Mr. Glad that pretrial detention was necessary because alternatives to detention were insufficient to serve the government's interests.

An order to pay an unattainable financial condition of pretrial release implicates two important constitutional rights.  First, equal protection and due process forbid jailing a person solely because of his inability to make a payment. *ODonnell v. Harris County,* 892 F.3d 147, 161-62 (5th Cir. 2018); *Bearden v. Georgia*, 461 U.S. 600, 665 (1983); *Tate v. Short*, 401 U.S. 395, 397-398 (1971); *Williams v. Illinois*, 399 U.S. 235 (1970).   In *Bearden v. Georgia*, the Court reiterated the core principle on which this substantive interest rests: the "impermissibility of imprisoning a defendant solely because of his lack of financial resources."  *Bearden*, 461 U.S. at 661.  As a result, the Court held that "[o]nly if the sentencing court determines that alternatives to

imprisonment are not adequate in a particular situation" to serve the government's interests may the state jail a person for nonpayment. *Id*. at 672.

Thus, government action that infringes the right against wealth-based detention must satisfy strict scrutiny. *See Frazier v. Jordan*, 457 F.2d 726, 728 (5th Cir. 1972) (invalidating a practice requiring an indigent person to either pay a fine or be jailed after conviction because the alternative jail term was not "necessary to promote a compelling governmental interest" (quotations omitted)); *see also Bearden*, 461 U.S. at 667-67 (requiring "careful inquiry" into the state's asserted interests and "the existence of alternative means for effectuating" those interests.); *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (explaining that the same principles apply prior to trial and that the Constitution requires "meaningful consideration of . . . alternatives" to "incarceration of those who cannot" pay a financial condition of release, and a finding that secured money bail "is *necessary* to reasonably assure defendant's presence at trial.") (emphasis added)); *Buffin v. City & Cty. Of San Francisco*, No. 15-CV-04959-YGR, 2018 WL 424362, at *8 (N.D. Cal. Jan. 16, 2018) (holding that "an examination of the *Bearden-Tate-Williams* line of cases persuades the Court that strict scrutiny applies to plaintiffs' Due Process and Equal Protection claims"). Under this standard, if the government's interest in "appearance at trial could reasonably be assured by … alternate [conditions] of release, pretrial confinement for inability to post money bail" is unconstitutional. *Rainwater,* 572 F.2d at 1058.

Second, "[f]reedom from bodily restraint," the Supreme Court has explained, "has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)); *accord Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Consistent with that principle, the Supreme Court has recognized a "'general rule' of substantive due process that the government may not detain a person prior to

10

a judgment of guilt in a criminal trial." *United States v. Salerno*, 481 U.S. 739, 749 (1987); *accord United States v. Neal*, 679 F.3d 737, 740 (8th Cir. 2012).  Like every other constitutional right, this fundamental right can be outweighed, but only if the government shows, after rigorous process, that detention is necessary to serve its interests (such as protecting public safety or reasonably assuring appearance at trial).

In *United States v. Salerno*, the Supreme Court announced the "carefully limited" circumstances under which the government may infringe on a person's "fundamental" right to pretrial liberty. 481 U.S. at 750. In that case, the Supreme Court considered a facial challenge to the federal Bail Reform Act, which permits the government to detain pretrial people charged with "extremely serious" federal felony offenses if they are found to be highly dangerous after an individualized "full-blown adversary hearing," and only where the "Government . . . convince[s] a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community . . . .", *id.* In determining under what circumstances the government's interests may outweigh an individual's right to pretrial liberty, the *Salerno* court subjected the Bail Reform Act to heightened scrutiny, holding that the government may detain individuals before trial only where that detention is necessary to serve a "compelling" government interest such as community safety and reasonably assuring court appearances. *Id.* at 745. And where "the Government proves by clear and convincing evidence that an arrestee presents *an identified and articulable* threat to an individual or the community," it has met its burden of necessity. *Id.* at 751 (emphasis added).

Every court to consider the question of the level of scrutiny that applies to the absolute deprivation of pretrial liberty has held that the government must demonstrate that its "infringement [of pretrial liberty] is narrowly tailored to serve a compelling state interest." *Lopez-Valenzuela v.*

*Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014); *Reem v. Hennessy*, No. 17-CV-06628-CRB, 2017 WL 6765247, at *1 (N.D. Cal. Nov. 29, 2017) ("The due process clauses of the Fifth and Fourteenth Amendments bar pretrial detention unless detention is necessary to serve a compelling government interest."); *ODonnell v. Harris Cty., Texas*, 251 F. Supp. 3d at 1156–57 (S.D. Tex. 2017) (holding that government action infringing pretrial liberty must be the least restrictive means necessary to serve court appearance and community safety); *see also Simpson v. Miller*, 387 P.3d 1270, 1276 (Ariz. 2017) ("[I]t is clear from *Salerno* and other decisions that the constitutionality of a pretrial detention scheme turns on whether particular procedures satisfy substantive due process standards."); *Brangan v. Commonwealth*, 80 N.E.3d 949, 962 (Mass. 2017) (holding that pretrial detention is permissible if "such detention is demonstrably necessary" to meet a compelling interest); *In re Humphrey*, 228 Cal. Rptr. 3d 513, 528 (Ct. App. 2018) (holding that a person may be detained only if "no less restrictive alternative will satisfy" the government's interests because pretrial detention is permissible "only to the degree necessary to serve a compelling governmental interest").

All of this means that, if the government requires a person to make a monetary payment in exchange for release from pretrial detention, the government must make findings concerning the person's ability to pay.  If the person cannot pay the amount required, such that the condition of release will function as a de facto detention order, then the government must justify the order to pay unattainable bail in the same way that it justifies a transparent order of detention.  In this case the trial court did not make the specific finding that detention was required, let alone a determination that the alternative conditions available were insufficient to serve any identified government interest such that pretrial detention as a last resort was required. Accordingly, the order of detention violates Mr. Glad's equal protection and due process rights.

**C. The trial court failed to provide the procedural safeguards necessary to have confidence in the pretrial detention decision**

1. Orders of detention must meet the requirements of procedural due process

Mr. Glad's constitutional claims include procedural aspects as well. *See, e.g.*, *Washington v. Harper*, 494 U.S. 210, 220 (1990) (explaining the interaction between claims that share substantive and procedural aspects). The Constitution requires safeguards to protect against the erroneous deprivation of substantive rights. *Id.* at 228. The procedural-due-process analysis "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)); *ODonnell v. Harris Cty.*, 892 F.3d 147, 157 (5th Cir. 2018) (same).

Here, the first step of the procedural-due-process analysis is satisfied, as Mr. Glad has been deprived of two substantive liberty interests: the right against wealth-based detention and the "fundamental" "interest in [pretrial] liberty." *Salerno*, 481 U.S. at 750. The second step of the procedural-due-process analysis—determining the procedures required for a valid pretrial detention order—proceeds under the *Mathews v. Eldridge* three-part balancing test, pursuant to which a court must consider, for each procedure:

> (1) the nature of "the private interest that will be affected," (2) the comparative "risk" of an "erroneous deprivation" of that interest with and without "additional or substitute procedural safeguards," and (3) the nature and magnitude of any countervailing interest in not providing "additional or substitute procedural requirement[s]."

*Turner v. Rogers*, 564 U.S. 431, 444-45 (2011) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). As discussed below, this balancing test has yielded several procedures necessary to protect an individual's right to pretrial liberty under procedural due process.

13

2.   <u>Most of the required safeguards are undisputed</u>

To protect an individual's right to pretrial liberty in bail proceedings, the basic safeguards required include notice, an opportunity to be heard and to present and confront evidence at a hearing with counsel, and findings on the record explaining the decision by clear and convincing evidence. *See, e.g.*, *Salerno*, 481 U.S. at 750 (upholding pretrial detention after "full-blown adversary hearing" with counsel, heightened evidentiary standard, opportunity to be heard, consideration of alternatives, and explained findings on the record); *ODonnell*, 892 F.3d at 160 (requiring on-the-record, "individualized, case-specific reasons" justifying a court's detention order); *Caliste v. Cantrell*,  329 F. Supp. 3d 296, 314-15 (E.D. La. 2018), *aff'd*, No. 18-30954, 2019 WL 4072068 (5th Cir. Aug. 29, 2019) ( "[t]he Court finds that in the context of hearings to determine pretrial detention Due Process requires: 1) an inquiry into the arrestee's ability to pay, including notice of the importance of this issue and the ability to be heard on this issue; 2) consideration of alternative conditions of release, including findings on the record applying the clear and convincing standard and explaining why an arrestee does not qualify for alternative conditions of release; and 3) representative counsel.").[3] These procedural safeguards are essential to ensure confidence in the decision and to enable meaningful review.

Accordingly, two things are clear: First, procedural due process requires and the trial court did not provide an explanation of the evidence relied on to conclude that detention was necessary

---

[3] *See also Turner v. Rogers*, 564 U.S. 431, 447-48 (2011) (applying the *Mathews* balancing test and finding that before a government can order incarceration due failure to pay child support, it must provide an adversarial hearing at which the arrestee has an opportunity to be heard, to present evidence, and to confront evidence offered by the government; an impartial decision-maker; meaningful consideration of less restrictive alternatives to pretrial detention; and, if the decision-maker issues a transparent or de facto order of detention, findings on the record by clear and convincing evidence that detention is necessary to serve a compelling government interest, and a statement of reasons explaining the decision).

because alternatives were inadequate. Because it is precisely to "demonstrate compliance with th[e] elementary requirement" that the decision rest "solely on the legal rules and evidence adduced at the hearing," it is well-established and essential that "the decision maker should state the reasons for his determination and indicate the evidence he relied on." *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). Second, it is clear that the trial court did not apply the "clear and convincing" evidence standard to any factual findings that may have formed the basis for its order.

3. <u>If the government seeks to enter an order of preventive pretrial detention, it must provide an adversarial hearing, proof by clear and convincing evidence, and findings on the record with individualized, case-specific reasons showing why detention is necessary</u>

At the adversarial hearing, if the government seeks to show an order of detention is necessary, the evidentiary standard must be clear and convincing evidence. As the Supreme Court explained in its seminal procedural due process decision in *Addington v. Texas*, 441 U.S. 418 (1979), the deprivation of the fundamental right to bodily liberty requires a heightened standard of proof beyond a mere preponderance to ensure the accuracy of the decision. Since *Addington*, the Supreme Court has never permitted application of a standard lower than "clear and convincing" evidence in any context in which bodily liberty is at stake.

In *Addington*, the Supreme Court held that, under the Due Process Clause, the standard of proof required before a person can be confined in state custody for mental illness based on the possibility of future dangerousness must be "equal to or greater than" the "clear and convincing" evidentiary standard. *Id.* at 433. Applying the balancing test from *Mathews v. Eldrige*, 424 U.S. 319 (1976), the Court first articulated the government's interest: "to protect the community from the dangerous tendencies of some who are mentally ill." *Addington*, 441 U.S. at 426. However, the Court explained: "Since the preponderance standard creates the risk of increasing the number of individuals erroneously committed, it is at least unclear to what extent, if any, the state's

interests are furthered by using a preponderance standard in such commitment proceedings." *Id*. The Court then balanced the important private interests at stake and concluded that "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." *Id*. at 427. The "clear and convincing" standard enables the government to achieve its interest when it has a convincing basis but also rigorously protects the fundamental individual rights at stake. *See id.* at 424.

The Court has reached the same conclusion in every other context in which a person's bodily liberty is at stake. *See Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 282–83 (1990) (explaining that the Court has required the clear and convincing evidence standard in deportation proceedings, denaturalization proceedings, civil commitment proceedings, proceedings for the termination of parental rights, in cases involving allegations of civil fraud, and in a variety of other kinds of civil cases implicating important interests); *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) ("This Court has mandated an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'").

Following *Addington*, in its next seminal case about the evidentiary standard required for deprivation of bodily liberty, the Supreme Court struck down on due process grounds Louisiana's statutory scheme for perpetuating the confinement of those acquitted on the basis of insanity in criminal trials. *Foucha v. Louisiana*, 504 U.S. 71, 82–83 (1992). The Court held that although "[t]he State may [] confine a mentally ill person if it shows by clear and convincing evidence that the individual is mentally ill and dangerous, [h]ere, the State has not carried that burden." *Id*. at 80 (quotation and citation omitted). In reaching this holding, *Foucha* relied on *Salerno*, 481 U.S.

at 749, explaining that the Court had upheld the federal statute's preventive detention mechanism in part because it required findings of dangerousness by the longstanding "clear and convincing" standard. *Foucha* held: "Unlike the sharply focused scheme at issue in *Salerno*, the Louisiana scheme of confinement is not carefully limited. Under the state statute, Foucha is not now entitled to an adversary hearing at which the State must prove by clear and convincing evidence that he is demonstrably dangerous to the community." 504 U.S. at 81. Finding "no convincing reason why the procedural safeguards against unwarranted confinement which are guaranteed to insane persons and those who have been convicted may be denied to a sane acquittee," the Court struck down the Louisiana statute. *Id.* at 86.

Lower courts, also interpreting *Salerno*, have consistently required clear and convincing evidence to justify detaining a person prior to trial.  The Ninth Circuit recently struck down the Arizona pretrial detention statute in part because the Arizona law, unlike the federal Bail Reform Act, did not require the government to prove by clear and convincing evidence that an individual arrestee's detention was necessary. *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 784-85 (9th Cir. 2014).  As the Ninth Circuit explained, one of the features that *Salerno* explicitly relied on was that the Act required the government "to prove by 'clear and convincing evidence' that the individual presented 'a demonstrable danger to the community' and that 'no conditions of release c[ould] reasonably assure the safety of the community.'"  *Id*. at 785.  Most recently, in *In re Humphrey*, the California Court of Appeal held under the federal Constitution that "[i]f [a] court concludes that an amount of bail the defendant is unable to pay is required to ensure his or her future court appearances, it may impose that amount only upon a determination by clear and convincing evidence that no less restrictive alternative will satisfy that purpose."  19 Cal. App. 5th

at 1037;[4] *see also Caliste v. Cantrell*, 329 F. Supp. 3d 296, 314-15 (E.D. La. 2018) (requiring "consideration of alternative conditions of release, including findings on the record applying the clear and convincing standard and explaining why an arrestee does not qualify for alternative conditions of release"); *Dixon v. City of St. Louis*, No. 4:19-CV-0112-AGF, 2019 WL 2437026, at *16 (E.D. Mo. June 11, 2019) (enjoining the city from imposing de facto orders of detention absent a showing that, "if financial conditions of release are imposed, the court made specific findings regarding the arrestee's ability to pay and found, by clear and convincing evidence, that no alternative conditions would reasonably assure the arrestee's future court appearance or the safety of others.").

The intermediate standard of "clear and convincing" evidence should apply regardless of whether the government seeks to detain a person pretrial based on a purported risk of danger to the community or a purported risk of flight because the private right at stake is the same. And the Supreme Court has already held in *Santosky*, *Addington*, and *Foucha* that fundamental private interests require a heightened burden of proof before the government can infringe them, because those interests are "particularly important" and "more substantial than mere loss of money." *Santosky*, 455 U.S. at 756. There is no compelling reason that "the degree of confidence our society thinks [it] should have in the correctness of factual conclusions," *id*. at 755, should be

---

[4] Numerous other state courts have held this standard to apply. *See, e.g.*, *State v. Ingram*, 165 A.3d 797, 803, 805 (N.J. 2017); *State v. Butler*, No. 2011–K–0879, 2011 WL 12678268 (La. App. 4th Cir. July 28, 2011), *writ not considered*, 75 So. 3d 442 (La. 2011); *Wheeler v. State*, 864 A.2d 1058, 1065 (Md. App. 2005); *Brill v. Gurich*, 965 P.2d 404, 409 (Okla. 1998); *Lynch v. United States*, 557 A.2d 580, 581 (D.C. 1989), *and compare Aime v. Com.*, 611 N.E.2d 204, 212-14 (Mass. 1993) (striking down preventive detention statute because it did not require the "clear and convincing" burden of proof), *with Mendonza v. Com.*, 673 N.E.2d 22, 30 (Mass. 1996) (upholding successor statute and holding that "clear and convincing" evidence standard is required for pretrial detention decisions based on a prediction of future dangerousness).

*lower* when the question is whether a person poses a risk of flight than when the question is whether the person poses a danger to other people in the community.

Analogous case law from the immigration context, where the liberty interest is considered more constrained than in the pretrial context, supports this conclusion. *See Singh v. Holder*, 638 F.3d 1196, 1203, 1204 (9th Cir. 2011) (requiring clear and convincing evidence regardless of whether the government seeks detention based on flight or dangerousness because "due process places a heightened burden of proof [where] the individual interests at stake . . . are both particularly important and more substantial than mere loss of money.")*; see also Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015) (same), *vacated and remanded on other grounds*, 138 S. Ct. 1260 (2018).

Only one court appears to have addressed in depth whether the standard of proof the government must satisfy under the constitution to detain someone due to a concern about flight risk is the same as the standard when the concern is community safety. In *Kleinbart v. United States*, 604 A.2d 861, 868 (D.C. 1992), the D.C. Court of Appeals held that the "clear and convincing" evidence standard should apply to determinations about whether to order pretrial detention based on flight risk. The court explained that "[a] defendant's liberty interest is no less—and thus requires no less protection—when the risk of his or her flight, rather than danger, is the basis for justifying detention without right to bail." *Id.* at 870. The court therefore held: "Although the federal Bail Reform Act could be construed—purely as a matter of statutory construction—to require only a preponderance standard in risk of flight cases . . . we believe that *Salerno*'s emphasis on the clear and convincing evidence standard to sustain the constitutionality of that statute as applied to danger necessarily carries over, as a requirement of due process, to risk of flight cases."

*Id.* This analysis has been adopted by the American Bar Association's Criminal Justice Standards,[5] and applied by a number of lower courts. *See Dixon*, 2019 WL 2437026; *Caliste*, 329 F. Supp. 3d at 314-15; *Humphrey*, 19 Cal. App. 5th at 1037.

Thus, although the constitutional issue of what ultimate standard of proof must apply at a pretrial detention hearing appears to be one of first impression in this Court, the holdings and reasoning in *Addington, Foucha, Santosky, Salerno*, *Lopez-Valenzuela*, *Kleinbart,* and *Humphrey* demonstrate that the deprivation of the fundamental right to bodily liberty requires a heightened standard of proof whether the government is considering alternatives to mitigate a risk of flight or alternatives to mitigate a risk of danger to the community. Given the impossibility of predicting future behavior, courts have struck a middle ground and followed *Addington*, avoiding the stringent "beyond a reasonable doubt" standard.  The "clear and convincing" standard strikes the correct balance, allowing the government to use pretrial detention in those "carefully limited" circumstances when there is clear evidence to support a finding that total incapacitation is necessary. [6]

---

[5] ABA Standard 10-5.8 explains that the "clear and convincing" standard applies to decisions relating to dangerousness and risk of flight.  Courts have long looked to the Standards for guidance when answering constitutional questions about the appropriate balance between individual rights and public safety in the field of criminal justice. *See, e.g.*, *Padilla v. Kentucky*, 559 U.S. 356, 367 (2010); *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984); *United States v. Teague*, 953 F.2d 1525, 1533 n.10 (11th Cir. 1992).

[6] Although the formal rules of evidence need not apply at detention hearings, the findings of clear and convincing evidence on which the government relies for the incapacitation of a presumptively innocent person must meet minimal standards of reliability. *See, e.g.*, *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) ("[W]hile the informality of bail hearings serves the demands of speed, the magistrate or district judge must also ensure the reliability of the evidence, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question." (quotation omitted)); *United States v. Accetturo*, 783 F.2d 382, 389 (3d Cir. 1986); *United States v. Acevedo-Ramos*, 755 F.2d 203, 207-08 (1st Cir. 1985); *Reem*, 2018 WL 1258137, at *3.

**D.  Mr. Glad's detention is unlawful and must be remedied with an order of habeas corpus requiring those procedures take place or he be released**

Mr. Glad has spent six months in pretrial detention despite the state's decision *not* to seek a no-bond hold in his case. Instead, he has been assigned a no-bond hold by another name: an order of release conditioned on payment of an extraordinary and unaffordable bond. At his bail reconsideration hearing, Mr. Glad informed the court he could not afford to pay $300,000 and argued alternatives to confinement could reasonably assure his appearance at trial and safety to the community. He showed he had ties to the community and would be able to make it to court appearances.

Not engaging with the support provided by Mr. Glad for his release, the district court left in place the order requiring Mr. Glad to pay $300,000 in exchange for his release. On what basis Mr. Glad does not know. The district court order lacks any indication of what evidence was credited or why, why alternatives to confinement were not sufficient to mitigate the court's concerns, or by what evidentiary standard the judge made this determination. Because the order of detention was entered absent constitutionally mandated procedures and substantive findings, the state's ongoing detention of Mr. Glad violates the United States Constitution.

Mr. Glad's case demonstrates the importance of making these findings, by clear and convincing evidence, and memorializing them on the record with individualized, case-specific reasons justifying a court's order of detention. Mr. Glad received an adversarial hearing. He was represented by an attorney and would have, if the government had put on any significant evidence or testimony, had the opportunity to confront that evidence. But because the trial court did not provide case-specific reasons for jailing Mr. Glad or explain why it did not consider alternatives to money bond to be sufficient, there can be no confidence in the decision to deny him his right to pretrial liberty. No court on review could determine what evidence was evaluated, the standard by

which it was evaluated, or what findings the court made about the availability of alternatives to detention.

The allegations against Mr. Glad are no doubt serious. And if this Court issues the writ requested by Mr. Glad, the State will have the opportunity to seek an order of detention against him at a constitutionally adequate hearing. But as this case stands, Mr. Glad is trapped in jail amidst a global pandemic and his detention does not comply with the requirements of the Due Process Clause. He is entitled to no further relief in State court, and his trial is still many months away. Only this Court can vindicate Mr. Glad's rights. A writ of habeas corpus should issue.

## V.    Conclusion

For the foregoing reasons, Petitioner Kenneth Glad respectfully requests that the Court issue a writ of habeas corpus ordering his immediate release unless the State seeks—within 24 hours of this Court's order—a thorough adversarial hearing that complies with the requirements for preventive detention described by the United States Supreme Court, which include making findings by clear and convincing evidence about whether he is a danger to the community and, if so, whether conditions of release exist that could reasonably assure Mr. Glad's presence at trial and the safety of the community.

Respectfully submitted this 25th day of August, 2020,

/s/ Adam Mueller
Adam Mueller
David Kaplan
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, Colorado 80203
amueller@hmflaw.com
dkaplan@hmflaw.com
(303) 831-7364

Alec Karakatsanis (*pro hac vice* application forthcoming)
(DC Bar No. 999294)

Olevia Boykin
(TX Bar No. 24105518)
Alexandria Twinem (*pro hac vice* application forthcoming)
(DC Bar No. 1644851)
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, DC 20009
alec@civilrightscorps.org
olevia@civilrightscorps.org
alexandria@civilrightscorps.org
(202) 670-4809

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. The foregoing was served via email on Bryan Schmid, El Paso County Attorney's Office, at BryanSchmid@elpasoco.com.

/s/Adam Mueller