**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-2585

KENNETH GLAD,

Petitioner,

v.

BILL ELDER, in his official capacity as EL PASO COUNTY SHERIFF, and DISTRICT ATTORNEY FOR THE FOURTH JUDICIAL DISTRICT

Respondents.

---

**RESPONDENT DISTRICT ATTORNEY FOR THE FOURTH JUDICIAL DISTRICT RESPONSE TO APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; ORDERS OF COURT DATED AUGUST 31, 2020 and DECEMBER 21, 2020 AND PETITIONER'S RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER**

---

Respondent, the Office of the District Attorney for the Fourth Judicial District of the State of Colorado, ("DA"), as the office prosecuting the Petitioner for criminal matters in the El Paso County District Court, case number 2020CR1194, by and through his attorneys El Paso County Attorney's Office, hereby submits its Combined Response to Mr. Glad's for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241, this Court's Orders of Application August 31, 2020 and December 21, 2020 and Petitioner's Renewed Motion for Temporary Restraining Order and as grounds in support thereof states as follows:

**I.   PRELIMINARY MATTERS BASED ON THIS COURT'S ORDERS DATED AUGUST 31, 2020 and DCEMBER 21, 2020.**

The DA address the following preliminary matters set forth in this Court's Orders dated August 31, 2020 and December 21, 2020:

1

1. DA refers the Court to the attachments to Glad's Writ of Habeas Corpus (ECF #1-1 through 1-15) as the record it should review in determination of the Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241 (hereinafter "the Writ") and Petitioner's Renewed Motion for Temporary Restraining Order (hereinafter "the TRO") and, if necessary, incorporates each of those attachments into this Response.

2. DA is not raising the affirmative defense that the Writ is time barred pursuant to 28 U.S.C. § 2244(d)(1) nor is the DA raising a failure to exhaust state remedies defense pursuant to Rule 5(b) of the Rule Governing Section 2254 Cases in the United States District Courts.

## II.  PROCEDURAL HISTORY OF CRIMINAL CASE

*1.* Kenneth Glad ("Glad") is currently and has been continuously incarcerated at the El Paso County Justice Center ("EPCJC"), 2739 East Las Vegas Street, Colorado Springs, Colorado 80906 following his arrest on February 24, 2020 on charges of first degree kidnapping, C.R.S. §18-3-301(1)(a), (2); second degree kidnapping C.R.S. §18-3-302(1) and (3); sexual assault, C.R.S. §18-3-402(1)(a) and (5); and C.R.S. §18-3-402(1)(a) and (4). *See* ECF #1-11.

2. On February 25, 2020, the El Paso County District Court set Mr. Glad's bond at $300,000 cash or surety. Mr. Glad's jury trial is currently scheduled for February 1, 2021.

3. On April 17, 2020, Glad's Public Defender moved the Trial Court for a modification of Glad's Bond (ECF #1-1); on April 14, 2020, DA Responded to Glad's Motion for Bond Modification (ECF #1-2); and on April 14, 2020, Glad filed his Reply to DA's Response (ECF #1-3).

4. On April 16, 2020, El Paso County District Judge Erin Sokol held a hearing on Glad's Motion for Bond Modification (see Transcriptionist's Transcript ECF #1-4).

5.          During the Bond Modification Hearing Judge Sokol advised the parties that she:

> [D]id spend some significant time reviewing the Motion for the Bond Modification, as well as the people's response to the defendant's Motion for Bond Modification, as well as the attachments to the people's response, as well as the public defender;s Reply to the people's response to the defendant's Motion for Bond Modification. There was an attachment there, which is a scholarly article, I will note, from the Pre-Trial Justice Institute regarding unsecured bonds and arguments to change legislation as I take it. (ECF #1-4, p. 3, lns. 10-17).
>
> \*    \*    \*
>
> The Supreme Court of Colorado, Justice Coats – he's the Chief Justice – has issued an opinion or a memorandum regarding the COVID – 19 pandemic and these sorts of issues. … There remains a clear need to detain some criminal defendants in the interest of public safety and therefore, jail populations cannot be reduced indiscriminately. This is a case of momentous proportions with respect to public safety. *In fact, it's difficult to really imagine a case with more public safety implications.* ECF #1-4, p. 6, l. 17 to p. 7, l. 2 (*emphasis* added).
>
> \*    \*    \*
>
> THE COURT [highlighting for the record the allegations against Glad]: When she [the Victim] got in the vehicle, she realized the defendant had his erect penis outside of his pants. He was masturbating. He then proceeded to kidnap her, hold her at knife point, force her to perform oral sex, and she only got away because she jumped out of the vehicle going at least 40 miles per hour. Video surveillance exists to show her rolling out of the vehicle. It's a shocker that she is alive today given the allegations, understanding they're allegations. And then, on December 17th, 2010, in Salt Lake County, Utah, the defendant pled guilty to another sexual offense, unlawful sexual activity with a minor, a felony, a third-degree felony. And he served six years in the Utah state prison and is a registered sex offender. In addition, he has another case, 20M1332, for indecent exposure involving masturbating in his car, and the victim in that case picked the defendant out of the lineup; so did the defendant (sic) in this case, whether it was 80 percent or 100 percent, it doesn't make any difference for bond arguments to me today. He is facing 16 to 48 years to life in prison for the F1. It is truly impossible for me to imagine many cases that would exceed the public safety concerns that are presented by this particular case…. (ECF #1-4, p. 7, l. 10 to p. 8, l. 3; *see also* ECF #1-5).

3

>   \*     \*     \*
>
>   THE COURT: Okay, I really appreciate it. Well, I have considered the argument of counsel, which were, again, laid out in a large stack of writing, which I have read in detail. I very much appreciate your efforts on this. I also have considered each and every statutory guideline that's set forth in the bond statutes. For the reasons that I set forth before, there are numerous statutory guidelines that Ms. Chadderdon has described as a matrix that I have considered, which generally, almost all point in the direction of a higher bond, but the one major concern here, and the prevailing concern, particularly given Chief Justice Coats' directions to our Courts is public safety. *It is almost impossible, again, for me to imagine a more elevated public safety risk than the case that is presented here, completely understanding that the defendant is presumed innocent and that these are mere allegations. The public safety risk is extremely elevated and so, I do think a highly elevated bond is appropriate in this case* and I'm going to deny the Motion to modify the bond. It will remain at a $300,000 amount with all due respect. (ECF #1-4, p. 11, ls. 8-25 (*emphasis* added)).

6. On July 17, 2020, Glad filed a 48 page Petition for Review of District Court's Bail Decision Filed Pursuant to C.R.S. §16-4-204 with the Colorado Court of Appeals (ECF #1-12) in which Glad advanced many of the same arguments he brings before this Court through his Writ of Habeas Corpus and Memorandum of Law. On July 31, 2020, after giving consideration to Glad's petition for review, the Colorado Court of Appeals dismissed the Petition (ECF #1-13).

7. On August 16, 2020, Glad filed a 51 page Petition for Relief Pursuant to C.A.R. 21 with the Colorado Supreme Court (ECF #1-14) in which Glad advanced many of the same arguments he brings before this Court through his Writ of Habeas Corpus and Memorandum of Law. On August 18, 2020, after giving consideration to Glad's Petition for Relief, the Colorado Supreme Court denied the Petition (ECF #1-15).

8. Trial in 2020CR1194 is currently set for February 1, 2021 after having been continued by the El Paso District Court due to COVID-19 protocols.

### III. Standard of Review

"An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 'is an attack by a person in custody upon the legality of that custody, and …the traditional function of the writ is to secure release from illegal custody." *Ramirez v. Goetz*, No. 17-cv01707-NYW, 2018 WL 526908, at*2 (D. Colo. Jan. 24, 2018) *quoting McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997). Such relief is only warranted if the applicant is in custody in violation of the Constitution or laws or treaties of the United States." *Ramirez*, 2018 WL 526908 at *2 quoting 28 U.S.C. § 2241(c)(3).

"The requirements for issuing a TRO mirror the requirements for issuing a preliminary injunction. In order to obtain a temporary restraining order, a plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) irreparable harm will ensue if the request for a TRO is denied; (3) the threatened injury outweighs the harm that the TRO may cause the defendant; and, (4) if issued, the TRO will not adversely affect the public interest." *Briscoe v. Sebelius*, 927 F. Supp. 2d 1109, 1114 (D. Colo. 2013) citing *General Motors Corp. v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007); *Heideman v. Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003); Fed. R. Civ. P. 65. "It is well settled that a [TRO] is an extraordinary remedy, and that it should not be issued unless the movant's right to relief is 'clear and unequivocal.'" *Heideman*, 348 F.3d at 1188 quoting *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).

### IV. ARGUMENT

#### A. This Court Does Not have Jurisdiction because Glad Cannot Meet His Burden to Overcome the Presumption of Abstention.

The DA hereby adopts Respondent, Sheriff Bill Elder's argument that under the *Younger* abstention doctrine, federal courts cannot interfere with ongoing state criminal proceedings and

5

must abstain from existing jurisdiction absent exceptional circumstances. *See Younger v. Harris,* 401 U.S. 37 (1971).

DA further asserts that "Under the *Younger* abstention doctrine federal courts are to abstain from exercising jurisdiction to interfere with state proceedings when the following three requirements are met: '(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.'" *Winn v. Cook*, 945 F.3d 1253, 1257 (10th Cir. 2019) *quoting Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006). DA asserts that at least two out of the three requirements for abstention under *Younger* have been met in this case.

### 1. *Ongoing Proceedings:*

It is undisputed that proceedings within the criminal case against Glad (2020CR1194) are still ongoing within the El Paso County District Court. However, given Glad's argument that the proceedings governing his bond reduction motion have cease, DA while disagreeing with Glad's argument, concedes that such an argument could be made that the first *Younger* requirement has not been met.

### 2. *Adequate State Forum to Hear the Claims Raised in the Writ and Motion for TRO:*

Glad had an opportunity and in fact did raise the issues raised in the Writ and Motion for TRO in each of the forums provided to him by the Colorado state courts. He moved to have his bond modified by the El Paso District Court and when that did not work the way he wanted it to he filed a Petition for Review with the Colorado Court of Appeals and a Petition for Relief in the Colorado Supreme Court. Each of those state judicial bodies indicated that they reviewed and

considered the positions raised by Glad, many of which are the exact same positions asserted in the Writ and Motion for TRO here, and then denied the relief requested by Glad. Thus, this requirement of the *Younger* abstention doctrine has not clearly been met.

### *3. Important State Interests:*

"The States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986) (*citing Younger*, 401 U.S. at 44-45). It is axiomatic that Colorado, like other states, has an "important state interest" in the enforcement of its criminal laws. *See e.g. People v. Allee,* 740 P.2d 1, 9 (Colo. 1987); *Strickland v. Wilson*, 399 Fed.Appx. 391, 397 (10th Cir. 2010) (the pending proceedings involve "important state interests – namely, the enforcement of state criminal laws…."); *Meador v. Paulson*, 385 Fed.Appx. 613 (8th Cir. 2010) ("the district court did not abuse its discretion in electing to abstain under *Younger v. Harris,* 401 U.S. 37 [ ] (1971), because at the time of the court's order, a state criminal proceeding against [petitioner] was ongoing; the proceeding implicated the important state interest of enforcing its criminal laws; and [petitioner] can (and did) raise his constitutional claim in that proceeding."). This *Younger* abstention doctrine requirement has therefore, also been met.

Glad asserts in his Reply to the Response filed by Respondent Elder that an exception to the *Younger* abstention doctrine applies because Glad "faces a 'threat of irreparable injury" which "'cannot be eliminated by …defense against a single criminal prosecution.'" *See* ECF #20, p. 6, *citing Winn*, 954 F.3d at 1259 and *Walck v. Edmonson*, 472 F.3d 1227, 1233 (10th Cir. 2007). However, Glad misapplies the irreparable harm exception to the *Younger* abstention doctrine to the facts of his case.

First, neither, *Younger, Winn nor Walck* stand for the proposition that a defendant assessed a bail amount that he cannot afford faces a threat of irreparable injury because the threat cannot be eliminated by the defense against a single criminal prosecution. In *Younger* the Court addressed the issue of whether the threat can be eliminated by the defense against a single criminal prosecution and held :

> Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, *the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.*
> \*     \*     \*
> And similarly, in *Douglas*, [ ] we made clear [ ] that: "It does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brough lawfully and in good faith…."

*Younger*, 401 U.S. at 46-47 *quoting Douglas v. City of Jeannette*, 319 U.S. 157, 164 (1943) (*emphasis* added).
*Winn* and *Walck* both involved the question of whether a forthcoming second state trial would constitute a violation of the defendant's double jeopardy rights. In *Winn*, the 10th Circuit court held that because "[t]he Double Jeopardy clause 'itself contains a *guarantee* that a trial will not occur' …a viable double-jeopardy claim warrants an exception to *Younger."* *Winn*, 945 F.3d at 1263. In *Walck,* the 10th Circuit court held that "*Younger* abstention is unwarranted where a criminal accused presents a colorable claim that a forthcoming second state trial will constitute a violation of her double jeopardy rights.." *Walck*, 472 F.3d at 1234. In the instant matter, there is no allegation that Glad is facing a violation of his double-jeopardy rights.

Glad also supports his exception to the *Younger* abstention doctrine by claiming that his case, because it alleges an "unconstitutional pretrial detention 'fits squarely within the irreparable harm exception.'" ECF #20, p. 7 *citing Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018).

However, *Arevalo* is also distinguishable on its facts because in *Arevalo*, the 9th Circuit court found that Arevalo's case easily falls within the irreparable arm exception to *Younger*, because Arevalo had "been incarcerated for over six months without a constitutionally adequate bail hearing." *Arevalo*, 882 F.3d at 766. In its statement of the facts before it, the *Arevalo* court stated:

> But first the facts. Erick Arevalo has been detained since he was arrested on July 1, 2017 and charged with various California crimes arising from a domestic dispute. On July 6, 2017, the California trial court summarily set Arevalo's bail at $1.5 million.
>
> On August 10, 2017, Arevalo filed a motion for bail hearing or bail reduction, arguing that the unreasoned excessive bail violated his Eighth and Fourteenth Amendment rights. He argued that financial release conditions are unconstitutional absent both specific procedural protections and a finding that non-financial conditions could not reasonably serve the State's interest.
>
> Arevalo also pointed out that he had no prior criminal record. … He requested an evidentiary hearing.
>
> At a hearing the same day, the trial court agreed to lower the bail amount to $1 million. The court noted that the charges were serious, but did not discuss Arevalo's ability to pay or *what government interests the bail amount would serve*.

*Arevalo*, 882 F.3d at 764-65 (*emphasis* added).

Clearly, the same is not true in the case before this Court. The transcript of the April 16, 2020 Bond Reduction Hearing shows that Judge Sokol considered the argument of counsel, both at the hearing and in the "large stack of writing" provided to the court for her consideration on the bond modification issue and each and every statutory guideline that's set forth in the bond statutes which generally, almost all point in the direction of a higher bond. *See* §II, ¶5, *supra*; ECF #1-4. Judge Sokol went on to state that "the one major concern here, and the prevailing concern, particularly given Chief Justice Coats' directions to our Courts is public safety. *It is almost impossible, again, for me to imagine a more elevated public safety risk than the case that is presented here, completely understanding that the defendant is presumed innocent and that these*

*are mere allegations. The public safety risk is extremely elevated and so, I do think a highly elevated bond is appropriate in this case.*" *Id.*

Accordingly, Glad's argument that an exception to the *Younger* abstention doctrine applies in his case is without merit and cannot stand. This Court does not have jurisdiction over the Writ and TRO because at least two of the three *Younger* abstention doctrine requirements are present and the exception to that doctrine argued by Glad is inapplicable given the facts of this case.

**B. Glad is Not Entitled to a Temporary Restraining Order Requiring His Immediate Release and Adjudicating His Petition for a Writ of Habeas Corpus because He Fails to Show that He is Clearly and Unequivocally Entitled to Such Relief.**

Glad asserts that he s entitled to a TRO because he is likely to succeed on the merits of constitutional challenge to his bail conditions as the trial court failed to "make specific findings based on the clear-and-convincing-evidence standard that his detention was necessary because alternatives to detention were insufficient to serve the government's interests of community safety or ensuring his presence at trial." ECF #20, p. 8 *citing* to ECF #3, pp. 9-20.

In *Elliott v. Brown*, Judge R. Brooke Jackson, evaluated the same claim made here by Glad.[1] In his opinion Judge Jackson noted:

> Defendant cited *United States v. Salerno*, 481 U.S. 739, 751 (1987) in support of [his claim that "to satisfy procedural due process, an order of de facto detention requires that the court consider Elliott's ability to pay, find that pretrial detention is required by 'clear and convincing evidence' and issue findings on the record"]. But *Salerno* addressed, and rejected, a due process challenge to a portion of the Bail Reform Act of 1984. 28 U.S.C. § 3141 *et seq*. Under the Bail Reform Act, which applies to pretrial detainees in federal criminal prosecutions, the government must either prove flight risk by a preponderance of the evidence or dangerousness to the community by clear and convincing evidence. 28 U.S.C. § 3142(f). *See United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

---

[1] In fact, the Trial Brief filed in this case is nearly identical to the one filed in the *Elliott v. Brown* matter and counsel for Mr. Glad in this case are essentially the same as those who represented Mr. Elliot against Sheriff Brown.

> The sentence in the motion to modify is not supported by *Salerno*. Requiring proof by clear and convincing evidence in order to set an "unattainable bond" based on flight risk in a Colorado criminal prosecution would expand Colorado law beyond what even the Bond Reform Act requires. Notably, the evidence that Mr. Elliott had eight previous failures to appeal in cases where he faced far lesser sentences, and that the Pretrial Report graded him as a "high risk" would seem to support a finding that he is a flight risk under either standard of proof.

*Elliott v. Brown*, No. 20-CV-00964-RBJ, 2020 WL 2112363, at *10, *fn*. 2 (D. Colo. May 4, 2020), *appeal dismissed*, No. 20-1175, 2020 WL 6472388 (10th Cir. Aug. 10, 2020).

Additionally, the facts regarding the hearing held in the *Elliott* criminal case regarding Mr. Elliott's bail amount are also substantially similar to those presented in this case. *See Elliott*, 2020 WL 2112363, at *10.

In *Elliott*, Judge Jackson found that "The Arapahoe judges did not accept the proposition that they had to set a bond that Mr. Elliott could afford, nor should they have under Colorado law. *Elliott* at *11 *citing People v. Jones*, 489 P.2d 596, 599 (Colo. 1971) ("The right to bail does not amount to a guarantee that every defendant who is charged with a crime will be released without bail if he is indigent."). Judge Jackson's finding should be the finding of this Court as well.

In support of his renewed Motion for a TRO, Glad also makes the preposterous assertion that "He was not told why his $300,000 bail was appropriate notwithstanding his inability to pay it." ECF #20, pp. 8-9. During the April 16, 2020 Bond Modification Hearing Judge Sokol advised Glad and his counsel that: (1) "There remains a clear need to detain some criminal defendants in the interest of public safety and therefore, jail populations cannot be reduced indiscriminately. This is a case of momentous proportions with respect to public safety. In fact, it's difficult to really imagine a case with more public safety implications;" (2) "It is truly impossible for me to imagine many cases that would exceed the public safety concerns that are presented by this particular

case…;" and (3) "I also have considered each and every statutory guideline that's set forth in the bond statutes. For the reasons that I set forth before, there are numerous statutory guidelines that Ms. Chadderdon has described as a matrix that I have considered, which generally, almost all point in the direction of a higher bond, but the one major concern here, and the prevailing concern, particularly given Chief Justice Coats' directions to our Courts is public safety. *It* is almost impossible, again, for me to imagine a more elevated public safety risk than the case that is presented here, completely understanding that the defendant is presumed innocent and that these are mere allegations. The public safety risk is extremely elevated and so, I do think a highly elevated bond is appropriate in this case." §II, ¶5, *supra*; ECF #1-4.  Clearly, Glad's assertion is incorrect at best.

In order to obtain a temporary restraining order Glad must establish: (1) a substantial likelihood of success on the merits; (2) irreparable harm will ensue if the request for a TRO is denied; (3) the threatened injury outweighs the harm that the TRO may cause the defendant; and, (4) if issued, the TRO will not adversely affect the public interest." *Briscoe*, 927 F. Supp. 2d 1109 at 1114; *Heideman*, 348 F.3d at 1188-89; Fed. R. Civ. P. 65. A TRO is an extraordinary remedy, that should not be issued unless Glad's right to relief is "clear and unequivocal." *Heideman*, 348 F.3d at 1188 quoting *Kikumura*, 242 F.3d at 955.

If the injunction (1) will disturb the status quo; (2) is mandatory as opposed to prohibitory; or (3) will provide the movant substantially all the relief he may recover after a full trial on the merits, the Tenth Circuit has held that "in these three situations, the movant must show that the four factors used in determining whether to issue a TRO '*weigh heavily and compellingly in* [*his*] *favor*…'" before the injunction can be issued. *Briscoe,* 927 F.Supp.2d at 1114 (citations omitted) (*emphasis* added). Under those circumstances, the proposed injunction "must be more closely

12

scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course" and "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (*en banc*).

In this case, Glad has not made a showing that the each of the four factors used in determining whether to issue a TRO "weigh heavily and compellingly in [his] favor…." *Briscoe,* 927 F.Supp.2d at 1114. At best Glad simply (1) makes suppositions regarding the likelihood of his success on the constitutional issues presented; (2) merely argues without providing evidence that he will suffer "tangible harms that accompany pretrial detention, including loss of employment, separation from family and impediments to assisting in his own trial." ECF #20, p. 10. Further, Glad makes no showing that the "tangible harms" previously stated outweigh the public safety harms clearly identified by Judge Sokol and the DA in the bond modification proceedings held in the trial court or that the public safety interests of the citizens of El Paso County and this state will not be adversely affected by the issuance of his requested TRO.

## CONCLUSION

For all of the foregoing reasons, Glad's Writ and Motion for a TRO should be denied by this Court. In the alternative, should this court find that *Younger* abstention doctrine is inapplicable to the facts of this case because the trial court failed to give Glad a constitutionally adequate bond hearing, DA requests this Court stay any order granting the habeas petition for a reasonable period of time to allow the trial court to conduct an constitutionally adequate bond modification hearing. *See Arevalo*, 882 F.3d at 767-68.

Respectfully submitted this 4th day of January, 2021.

**El Paso County Attorney's Office**

By: *s/ Bryan E. Schmid*
Bryan E. Schmid, Colo. Bar #41873
Senior Assistant County Attorney
Centennial Hall
200 S. Cascade Avenue
Colorado Springs, CO 80903
Office: (719) 520-7032
Cell: (719) 258-0375
E-mail: bryanschmid@elpasoco.com

**Attorney for Respondent, District Attorney for the Fourth Judicial District of Colorado**

14

**Certificate of Service**

This is to certify that on the 4th day of January, 2021, I electronically filed the foregoing **RESPONDENT DISTRICT ATTORNEY FOR THE FOURTH JUDICIAL DISTRICT RESPONSE TO APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; ORDERS OF COURT DATED AUGUST 31, 2020 and DECEMBER 21, 2020 AND PETITIONER'S RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

Adam Mueller
David Kaplan
Haddon, Morgan and Foreman, P.C.
amueller@hmflaw.com
dkaplan@hmflaw.com

Alec Karakatsanis
Olevia Boykin
Alexandria Twinem
Civil Rights Corps
alec@civilrightscorps.org
olevia@civilrightscorps.org
alexandria@civilrightscorps.org.

*s/ Bryan E. Schmid*
Bryan E. Schmid
El Paso County Attorney's Office