IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 20-cv-02585-LTB-GPG

KENNETH GLAD,

      Applicant,

v.

BILL ELDER, In his Official Capacity as El Paso County Sheriff, and
DISTRICT ATTORNEY FOR THE FOURTH JUDICIAL DISTRICT,

      Respondents.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter comes before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1.[1]   The matter has been referred to this Magistrate Judge for recommendation.   *See* ECF No. 29.[2]

---

[1] ECF No. 1 is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).   I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   Fed. R. Civ. P. 72(b).   The party filing objections must specifically identify those findings or recommendations to which the objections are being made.   The District Court need not consider frivolous, conclusive, or general objections.   A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.   *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).   Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal determinations of the Magistrate Judge that are accepted or adopted by the District Court.   *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

The Court has reviewed the filings to date.   The Court has considered the entire case file, the applicable law, and is sufficiently advised in the premises.   This Magistrate Judge respectfully recommends that the Application be denied, the requests for injunctive relief be denied as moot, and the action be dismissed with prejudice.

I. Background

   Petitioner currently is detained at the El Paso County Detention Center in Colorado Springs, Colorado, pending trial in State of Colorado Criminal Case No. 2020CR1194.   On August 25, 2020, Petitioner, through counsel, filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1.   The $5 filing fee has been paid.   *Id.*

Petitioner also filed a Motion for a Temporary Restraining Order, ECF No. 2, which was denied by Senior Judge Lewis T. Babcock on September 1, 2020, because Petitioner's request for an injunction would require an affirmative act by Respondents, and Petitioner has failed to meet the heightened burden of a strong showing of the likelihood of success on the merits.   ECF No. 8 at 2-3.

On August 31, 2020, the Court directed a response regarding affirmative defenses.   After the Attorney General of the State of Colorado requested to be dismissed from the action, *see* ECF No. 17, Respondent Elder filed a Response, ECF No. 19, on November 16, 2020.   Respondent Elder conceded that his position is "limited," and "defer[red] argument regarding the constitutionality of [Petitioner's] bond conditions to the 4th Judicial District Attorney's Office."   *See* ECF No. 19 at 2.   The Court, therefore, directed the District Attorney for the 4th Judicial District (the DA) to

2

respond to the Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1, and address both the merits and affirmative defenses if necessary.   *See* ECF No. 21.   The Court also directed the DA to respond to Petitioner's November 16, 2020, request to renew the motion for temporary restraining order, *see* ECF No. 20 at 8, n.2.  *Id.*

On January 4, 2021, the DA responded to the § 2241 Application and to the Renewed Motion for Temporary Restraining Order.   *See* ECF No. 25.   Petitioner replied to the Response on January 19, 2021.   *See* ECF No. 27.

The DA does not raise the affirmative defenses of untimeliness or failure to exhaust state remedies.   ECF No. 25 at 2.   The DA confirms that Petitioner has been detained at the El Paso County Justice Center since his arrest on February 24, 2020, *id.,* and that Petitioner is charged with (1) first degree kidnapping, pursuant to Colo. Rev. Stat. § 18-3-301(1)(a), (2); (2) second degree kidnapping, pursuant to Colo. Rev. Stat. § 18-3-302(1), (3); (3) sexual assault, pursuant to Colo. Rev. Stat. § 18-3-402(1)(a)(5); (4 ) sexual assault, pursuant to Colo. Rev. Stat. § 18-3-402(1)(a)(4); and (5) three counts of a crime of violence, pursuant to Colo. Rev. § 18-1.3-406(2)(a)(I)(A) in Criminal Case No. 2020CR1194.   *Id;* ECF No. 1-11 at 1.

II. Legal Standards

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811

(10th Cir. 1997).   Habeas corpus relief is warranted only if Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3).

III. Analysis

Petitioner asserts in the August 25 Petition that pursuant to *United States v. Salerno,* 481 U.S. 739 (1987), the Due Process Clause of the Fourteenth Amendment forbids the State from holding a pretrial detainee unless the State complies with "exacting substantive and procedural requirements," ECF No. 1 at 7, and the State "must provide sufficient safeguards to allow the accused person to vindicate his substantive rights," *id* at 8.   Petitioner further asserts that the state court at least must "find that the accused person poses a risk of flight or danger to the community by clear and convincing evidence, that the court find no condition or combination of conditions of release could adequately mitigate any potential risks, and that the court explain the basis for those findings on the record."   *Id.*   In conclusion, Petitioner contends that the state court failed to make a "procedurally compliant finding" that he poses an "immitigable risk of flight or danger to the community, and because the court did not find that [he] was able to pay the money bail amount required in his case, Respondent has custody over him in violation of the Constitution of the United States.   *Id.*

Petitioner seeks a writ of habeas corpus from this Court ordering his immediate release unless the State conducts a thorough adversarial hearing, within twenty-four hours of this Court's order, which complies with the requirements for preventative detention described by the United States Supreme Court.   *Id.*

4

In response to the Petition, ECF No. 25, the DA argues that this Court does not have jurisdiction because Petitioner is not able to overcome the presumption of abstention under *Younger v. Harris,* 401 U.S. 37 (1971), *id.* at 5-6.   The DA contends that at least two of the three conditions for abstention set forth in *Younger* have been met.   *Id.* at 6.   The DA concedes, however, that even though he states he does not agree, an argument could be made that one of the conditions is not met because Petitioner's bond reduction proceedings are no longer pending.   *Id.*   The DA, however, argues that this bond/bail issue involves important state interests, which are matters traditionally decided by state law, and Petitioner was afforded an adequate forum to hear the claims that are being raised in this Petition.   ECF No. 25 at 6-7.

The DA relied on *Elliott v. Brown,* No. 20-cv-00964-RBJ, 2020 WL 2112363, at *10, n.2 (D. Colo. May 4, 2020), *appeal dismissed,* No. 20-1175, 2020 WL 6472388 (10th Cir. Aug. 10, 2020), for his suggestions that this Court find as District Judge Jackson found in *Elliott,* which was that *Salerno* does not stand for setting a bond based on what a defendant can afford, and that requiring proof by clear and convincing evidence to set an unattainable bond based on flight risk goes beyond Colorado law and what the Bond Reform Act requires.   ECF No. 25 at 10-11.

In Petitioner's January 19, 2021, Reply, he argues that abstention pursuant to *Younger* is not warranted in this case, because abstention is only proper if all of the three conditions set forth in *Younger* are met.   ECF No. 27 at 2.   Petitioner also contends that in *Elliott* the issue addressed by the court was an unattainable bond based on flight risk, which was not at issue in *Salerno.   Id.* at 5.   Petitioner concludes

that a clear and convincing evidence standard must apply to finding a defendant is dangerous before he is subject to pretrial detention and that a "de facto detention was the least restrictive means for ensuring public safety by explicitly considering alternatives to unaffordable money bail" . . . and "whether those conditions would sufficiently protect the community."   *Id.* at 5-7.

A.  Abstention

First, the Court will address abstention as set forth in *Younger.*   Absent extraordinary or special circumstances, federal courts are prohibited from interfering with ongoing state criminal proceedings.   *Younger,* 401 U.S. 37*; Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997).   Abstention is appropriate if three conditions are met: "(1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; **and** (3) the state proceedings afford an adequate opportunity to present the federal constitutional challenges."   *Phelps*, 122 F.3d at 889 (emphasis added).

When *Younger's* three requirements are met, abstention is mandatory unless one of three exceptions applies: the prosecution was "(1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstance creating a threat of 'irreparable injury' both great and immediate."   *Winn v. Cook,* 945 F.3d 1253, 1258-59 (10th Cir. 2019) (quoting *Phelps*, 59 F.3d at 1063-64) (Internal quotation marks omitted).

*1. Conditions/Finality*

As stated above abstention is required when all three conditions are met, not just one or two of the three.   *Phelps*, 122 F.3d at 889.

After review of the DA's Response, ECF No. 25, and Petitioner's Application, ECF No. 1, and Reply, ECF No. 27, the Court finds the first abstention issue before this Court is whether the exhausted results of the bond review hearing are collateral to the state prosecution in Petitioner's case, and this Court has jurisdiction based on the finality of the issue in state court.

In *Winn*, the Tenth Circuit identified and discussed at length the type of pretrial issue that would not require abstention under *Younger.*   First, as determined by *United States v. MacDonald,* 435 U.S. 850, 861 (1978), "[i]t is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial.   If the [accused is denied] his right to a speedy trial, that loss, by definition, occurs before trial."   *Winn,* 945 F.3d at 1262.

Furthermore, the Tenth Circuit in *Walck v. Edmondson,* 472 F.3d 1227, 1233 (10th Cir. 2007), quoted *Abney v. United States*, 431 U.S. 651, 660-62 (1977))   as follows:

> "[T]he Double Jeopardy Clause . . . is a guarantee against being twice put to trial for the same offense.   The guarantee's protections would be lost if the accused were forced to run the gauntlet a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit."

Although the Tenth Circuit in *Winn* acknowledged that circuit courts have not recognized any exceptions to *Younger* outside the context of the speedy-trial and double-jeopardy claims, the Circuit did note that "*Younger* does not require abstention in the two exceptional circumstances because "federal intervention is necessary to prevent the challenge from becoming moot."   *Winn*, 945 F.3d at 1263 (citation and internal quotation marks omitted).

An extension of *Winn* to Petitioner's case is not unreasonable and finality of the bail/bond issue in state court is conceivable, which would result in abstention being improper.   Even if the Court were to find that all three *Younger* abstention conditions have been met, an irreparable harm exception may exist, which the Court will discuss below.

## 2.   Irreparable Harm

To establish extraordinary or special circumstances, Petitioner must be facing an irreparable injury that is both great and immediate.   *See Younger*, 401 U.S. at 46. Furthermore, the exceptions to Younger provide only for a "very narrow gate for federal intervention."   *Phelps*, 59 F.3d at 1064 (internal quotation marks omitted).   Finally, it is Petitioner's "'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment."   *Id.* at 890.

In *Winn,* the Tenth Circuit addressed irreparable harm in a footnote as follows:

> This is not to say that *Younger's* third exception has not been invoked in other criminal-proceeding contexts.   In *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), the Court said that "the predicate for a *Younger v. Harris* dismissal was lacking ... [when the state agency that could afford relief] was incompetent by reason of bias to adjudicate the issues."   One can read *Gibson* as an example of an

inadequate state forum,   *see* Erwin Chemerinsky, *Federal Jurisdiction* § 13.5, at 910 (7th ed. 2016), thus failing *Younger's* second requirement. But both the Supreme Court, *see Kugler v. Helfant*, 421 U.S. 117, 125 n.4, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), and a leading treatise, Richard H. Fallon et al., *Hart and Wechsler's The Federal Courts and the Federal System* 1098–99 (6th ed. 2009), have instead characterized it as falling under the third, catch-all extraordinary-circumstances exception.

Also, the Supreme Court has held that *Younger* does not apply to injunctions sought by a defendant when grant of the injunction "could not prejudice the conduct of the trial on the merits." *Gerstein v. Pugh*, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (challenge to pretrial detention without a judicial hearing).   The Ninth Circuit has held that in similar circumstances, abstention is also improper because the defendant faces irreparable injury.   *See Page v. King*, 932 F.3d 898, 904 (9th Cir. 2019) (challenge to pretrial detention; because "loss of liberty for the time of pretrial detention is 'irretrievable' regardless of the outcome at trial," defendant's claim "fits squarely within the irreparable harm exception to *Younger*" (internal quotation marks omitted)); *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (*Younger* did not preclude adjudicating pretrial habeas petition alleging defendant was being jailed without a constitutionally adequate bail hearing because "[d]eprivation of physical liberty by detention constitutes irreparable harm").

*Winn,* 945 F.3d at 1260, n.1.

Again, an extension of *Winn* in this case appears reasonable based on Footnote One in *Winn.*   The footnote does not limit this preclusion to a situation where like *Arevalo* a defendant is denied a bail hearing for six months.

B. *Salerno*/Due Process/Clear and Convincing

In the § 2241 Application, Petitioner, relying on *Salerno,* argues that he was denied his equal protection and due process rights, because "no court has made a procedurally compliant finding that [Petitioner] poses an immitigable risk of flight or danger to the community, and because the court did not find that [petitioner] was able to pay the money bail amount required in his case."   ECF No. 1 at 8.   In the Reply, ECF

No. 27, Petitioner argues in support of his lack of a "due-process-complaint bond hearing" claim that (1) the bond judge did not "articulate the evidentiary standard that she was relying on or explain how each of her findings was supported by clear and convincing evidence in the record" and in failing to do so "she created an insufficient record that does not allow [Petitioner] to know why he is being detained or allow a reviewing court to properly consider the bond court's reasoning and the sufficiency of the evidence on which it relied."   ECF No. 27 at 6.   Petitioner further contends in the Reply that the bond court failed to find by clear and convincing evidence that de facto detention was the least restrictive means for ensuring public safety by explicitly considering alternatives to unaffordable money bail for [Petitioner] and whether those conditions would sufficiently protect the irreparable injuries that are excepted from *Younger* abstention.   *Id.* at 5-7.

For the following reasons, the § 2241 Application should be denied, and the action should be dismissed.

First, at issue in *Salerno* is the Bail Reform Act of 1984 (Act).   Section 3142(e) of 18 U.S.C. "requires courts to detain prior to trial arrestees charged with certain serious felonies if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions "will reasonably assure . . . the safety of any other person and the community."   In *Salerno,* the Court summarized § 3142 et seq. as follows:

> [Section] 3141(a) of the Act requires a judicial officer to determine whether
> an arrestee shall be detained.   Section 3142(e) provides that "[i]f, after a
> hearing pursuant to the provisions of subsection (f), the judicial officer
> finds that no condition or combination of conditions will reasonably assure

the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial."   Section 3142(f) provides the arrestee with a number of procedural safeguards.   He may request the presence of counsel at the detention hearing, he may testify and present witnesses in his behalf, as well as proffer evidence, and he may cross-examine other witnesses appearing at the hearing.   If the judicial officer finds that no conditions of pretrial release can reasonably assure the safety of other persons and the community, he must state his findings of fact in writing, § 3142(i), and support his conclusion with "clear and convincing evidence," § 3142(f).

The judicial officer is not given unbridled discretion in making the detention determination.   Congress has specified the considerations relevant to that decision. These factors include the nature and seriousness of the charges, the substantiality of the Government's evidence against the arrestee, the arrestee's background and characteristics, and the nature and seriousness of the danger posed by the suspect's release.   § 3142(g). Should a judicial officer order detention, the detainee is entitled to expedited appellate review of the detention order.   §§ 3145(b), (c).

*Salerno,* 481 U.S. at 742-43.

Although this Court finds the factors set forth by Congress under § 3142(g) to have been at issue and considered by the bond court judge, the Court takes note of, and agrees with, the court's finding in *Elliott v. Brown,* No. 20-cv-00964-RBJ, ECF No. 25 at 20, n. 2 (D. Colo. May 4, 2020), *appeal dismissed,* No. 20-1175 (10th Cir. Aug. 10, 2020).   Contrary to the petitioner's arguments in *Elliott,* just like his arguments in this case, "*Salerno* addressed, and rejected, a due process challenge to a portion of the Bail Reform Act of 1984 . . . which applies to pretrial detainees in federal criminal prosecutions . . . ."

Second, the Court has reviewed the relevant portion of the bond hearing transcript, as set forth below.

THE COURT: Mr. Glad is here for a hearing on bond. I note that bond hasn't been addressed before. Mr. Glad has a $300,000 bond. I did

spend some significant time reviewing the Motion for the Bond Modification, as well as the people's response to the defendant's Motion for Bond Modification, as well as the attachments to the people's response, as well as the public defender's Reply to the people's response to the defendant's Motion for Bond Modification.   There was an attachment there, which is a scholarly article, I will note, from the Pre-Trial Justice Institute regarding unsecured bonds and arguments to change legislation as I take it.   So, in any event, I am ready to proceed when you are, Ms. Woods.   Let me ask, first, you have a right to a public proceeding today and we are not able to have the public in here today because of the COVID-19 pandemic.   Are you willing to waive your right?

MR. GLAD: Yes, I am, Your Honor.

THE COURT: Okay, thank you so much.

MS. WOODS: Judge, I am asking for a $25,000 bond in this case. I would refer the Court back to the Motions I filed. My primary argument, besides the fact that Mr. Glad does have connections to the community, he's lived here for a year and a half.   He does have very strong family support.   His family lives in Utah, but they are very supportive of him.   He chose to come out here to start over after his prior sentence, but once he got here, he got a job, he has a place to live.   My argument today is that the amount of bond requested in this case, I don't understand the purpose of a higher bond.   I understand the arguments for a bond, the reasons for it, why things are put in place, but the only reason this is a $300,000 bond is because Mr. Glad can't post it.   This is a no bond hold for Mr. Glad. He will never be able to post it.   If he was richer, if he had resources, he would be able to post bond and be back in the community, and I don't think anyone is going to assert that richer people are safer to the community.   I don't think that's an argument Ms. Chadderdon is ever going to make, but that's what a no bond hold here says; is that if Mr. Glad was richer, fine, we can put him out there.   There's also no evidence to support that a $300,000 bond or a $25,000 bond is safer.   There's no connection to monetary amount and community safety.   I understand the allegations here are incredibly serious. He is presumed innocent of them, though, and I think that here, the $25,000 bond is something that he can post, so asking for anything higher is simply saying, "I know he's poor.   I know he can't post.   It's a no bond hold."   As I stated in my Motion, there was a mechanism for the people to pursue a no bond hold here.   They had the option 96 hours after his arrest to file for that.   If we'd gone to a hearing on that, I could've questioned their evidence. I could've raised issues and all of that, but instead, he doesn't have the benefit of that due process right.   He also now doesn't have the benefit of bond.   So, I think

here, in order to keep it this high is saying that we're okay with the fact that bond, essentially, can be a farce here for no bond holds.   And so, I'm asking the Court to give him an amount he can post, which is $25,000 and to give him the right to pre-trial release here.

THE COURT: Ms. Woods, you've done a great job briefing these arguments and I agree that our bond system has a lot of flaws.   I don't think there's any Judge in this entire country who thinks that it works appropriately.   I'm not a legislator. I can't change the legislation and essentially, your argument sounds to me like any defendant should either have a no bond hold or be released because they should be able to pay the bond they can afford, right?   That doesn't make sense to me from the legislative scheme, what it's intended to do.   It would – while your arguments make sense to me, that's not what the legislation has aimed to do, to either have someone on a no bond hold or release them because they can afford it.   So, while I really appreciate your arguments, I understand them and I think they have a lot of merit, they are not supported by our legislation at this time.

MS. WOODS: Well, Judge, I do think the legislation has asked Judges to consider someone's individual financial circumstances when setting a bond.

THE COURT: Yeah.

MS. WOODS: There's also a million other things to set.   I didn't ask for a PR bond and I know the Court probably knows that's very hard for me to do, to appear and not ask for a PR bond, but I did that because I respect the other considerations outlined in the statute.

THE COURT: But you're still asking to set a bond at a point where he would be released.   You're still saying it's either no bond or its release.

MS. WOODS: I think I'm saying that one of the factors the Court should consider is the financial ability of the defendant, his individual . . . .

THE COURT: Of course, but that's one consideration. And let me re-read because I don't think Mr. Glad was here – and I'm sorry, Ms. Chadderdon, I'll give you the opportunity to speak in a moment too.

MS. CHADDERDON: It's okay, Judge.   Thank you.

THE COURT: Ms. Woods is making very good arguments.   I just want to make sure I vet them.   The Supreme Court of Colorado, Justice

Coats - he's the Chief Justice - has issued an opinion or a memorandum regarding the COVID-19 pandemic and these sorts of issues.   With respect to bond, he has said that the Courts of various counties and districts of the state continue to work toward reducing the populations of our jails, which is a high-risk environment for spreading the virus.   There remains a clear need to detain some criminal defendants in the interest of public safety and therefore, jail populations cannot be reduced indiscriminately.   This is a case of momentous proportions with respect to public safety.   In fact, it's difficult to really imagine a case with more public safety implications.   I completely understand your argument that Mr. Glad is innocent and that is absolutely true and that these are just allegations, but let me just highlight those for the record quickly.   He is charged with offering the victim, a stranger, a young woman, a ride to work during – I believe it was during the bomb cyclone, is that right?

MS. CHADDERDON: Yes, Judge, it was snowing at the time.

THE COURT: When she got in the vehicle, she realized the defendant had his erect penis outside of his pants.   He was masturbating. He then proceeded to kidnap her, hold her at knife point, force her to perform oral sex, and she only got away because she jumped out of the vehicle going at least 40 miles per hour.   Video surveillance exists to show her rolling out of the vehicle.   It's a shocker that she is alive today given the allegations, understanding they're allegations.   And then, on December 17th, 2010, in Salt Lake County, Utah, the defendant pled guilty to another sexual offense, unlawful sexual activity with a minor, a felony, a third-degree felony.   And he served six years in the Utah state prison and is a registered sex offender.   In addition, he has another case, 20M1332, for indecent exposure involving masturbating in his car, and the victim in that case picked the defendant out of the lineup; so did the defendant (sic) in this case, whether it was 80 percent or 100 percent, it doesn't make any difference for bond arguments to me today.   He is facing 16 to 48 years to life in prison for the F1.   It is truly impossible for me to imagine many cases that would exceed the public safety concerns that are presented by this particular case, and I think this is exactly the kind of case that the Chief Justice Coats is talking about with respect to bond arguments.   I also, again, just reject the argument that either someone should have a no bond hold or be released on a bond that they can afford.   That is not what our legislation has set out to accomplish and it's not for me to test that legislation or to disagree with the legislation.   It is what it is.   I am Ordered to follow the law.   So, okay.   There are my concerns. Ms. Chadderdon?

MS. CHADDERDON: Just to clarify the record, quickly.   The potential sentence for the F1 is life in prison.   The potential sentence on the F2 sex assault is (inaudible) to 48, but I think the Court just misspoke and I wanted to clarify that for the record.

THE COURT: I'm sorry, that's what I meant to say, and I didn't know I misspoke, so thank you.

MS. CHADDERDON: It's fine, Judge.   I suppose I would stand on the basis of the Motion.   I will say that in defense's Reply, they stated that there is no reason for the $300,000 bond.   Judge Miles reviewed this case at TV court, and we actually – the people – we asked for a higher bond and the Judge was given the information about his previous criminal history, about the type of case, and he was the one who, in his discretion, set the case at a $300,000 bond.   So, in essence, it's already been reviewed by a Judge and Judge Miles was the person who decided that $300,000 was an appropriate amount.   With regard to defense's argument that it's essentially the equivalent of a no bond hold, I think – I agree with the Court.   The statute doesn't specifically – well – the statute doesn't specifically state to post a bond that the defendant can pay and get out.   It gives the Court guidance and a whole series of different factors to consider when setting a bond.   So, I agree with the Court that it shouldn't just be a no bond hold situation or letting somebody out.   The factors that should be taken into consideration when setting the bond are the defendant's history, his criminal history, the penalties that he's facing in this particular case, what his community ties are, and those are all of the different factors that are to be considered when setting a bond, and that's why I think, in this case in particular, an elevated bond is very appropriate.   It's appropriate based on the nature of the charges and the allegations.   It's appropriate based on the potential penalties.   It's appropriate based on the defendant's aggravated criminal history.   And I would note for the Court that the only community tie that defense can really state is that he's lived in Colorado Springs for a year and a half and he has a job.   He doesn't have significant family here.   He doesn't have – he didn't grow up here.   All of his family is in Utah and those are the people he is calling when he has an opportunity.   So, I think that based on the factors that the statute lays out for the Court, that an elevated bond is appropriate based on that sort of matrix of consideration.   So, I do think that the bond is appropriately set based on Judge Miles' setting the bond at $300,000, and I do think that a highly elevated bond is particularly appropriate in this case.   And I will note, as I noted in my Motion as well, the defendant is young.   I'm not aware of any aggravated or concerning health issues that he has.   I think if there was ever a case that was appropriate for an elevated bond, it would be this one, Judge.

THE COURT: Okay.

MS. WOODS: Judge, if I could just briefly respond.

THE COURT: Okay.

MS. WOODS: I would just note I agree the legislator [sic] has not put the statute where I want it to be, where I think a lot of us would.   I would note that 16-4-103 notes that people should be presumed to be released.   The presumption in Colorado is for release.   And I think the presumption that is countered by all of these factors, and there's nothing in the statute that says, "Worse case, worse criminal history equals higher bond."   What it says is that the Court should impose all methods of bond and conditions of release to avoid unnecessary pretrial incarceration. And so, I think here, the appropriate response would be to lower the bond because the Court isn't saying the bond should be set – if it's an F1, it should be set this high; if it's an F2, it should be set this high.   In fact, that's been found to be unconstitutional.   I think what the statute is trying to say is people should be released under the least restrictive means necessary for them.   So, here, with Mr. Glad, what I proposed in my Motion is a $25,000 bond with ankle monitoring.   He is willing to stay in his house as part of that condition as well.   I think the purpose of the statute, as it stands, is to put release in place with conditions necessary to combat the serious concerns the Court has noted and I don't think the proper solution here is a $300,000 bond.   I think it's a $25,000 bond with ankle monitoring and the conditions, if necessary, that he stay in his home besides going out for medical things, or groceries, or something like that. That's all I wanted to add.

THE COURT: Okay, I really appreciate it.   Well, I have considered the argument of counsel, which were, again, laid out in a large stack of writing, which I have read in detail.   I very much appreciate your efforts on this.   I also have considered each and every statutory guideline that's set forth in the bond statutes.   For the reasons that I set forth before, there are numerous statutory guidelines that Ms. Chadderdon has described as a matrix that I have considered, which generally, almost all point in the direction of a higher bond, but the one major concern here, and the prevailing concern, particularly given Chief Justice Coats' directions to our Courts is public safety.   It is almost impossible, again, for me to imagine a more elevated public safety risk than the case that is presented here, completely understanding that the defendant is presumed innocent and that these are mere allegations.   The public safety risk is extremely

elevated and so, I do think a highly elevated bond is appropriate in this
case and I'm going to deny the Motion to modify the bond.

*Glad,* No. 20CR1194, Bond Hr'g Tr. at 3-11; ECF No. 1-4 at 3-11.

Based on the transcript of the bond hearing, sufficient evidence was presented
and considered by the bond court to support its decision.   The bond court considered in
great detail Petitioner's criminal history, the basis for the charges in his pending trial,
how long he has lived in Colorado Springs, and the fact that his family lives in Utah.
*See* ECF No. 1-4 at 7-8.   The court also heard argument from defense counsel that the
presumption in Colorado is for release and that a $25,000 bond with ankle monitoring
and the conditions, if necessary, that he stay in his home besides going out for medical
things, or groceries, would be the least restrictive means for ensuring public safety.

Furthermore, Petitioner fails to assert what explicitly is required of a state bond
court to set forth as clear and convincing evidence, and how the bond court in this state
criminal proceeding failed to meet this standard, such that a violation of Petitioner's
Fourteenth Amendment rights resulted, when the court determined a $300,000 bond is
necessary and when finding the least restrictive means for ensuring public safety
beyond was to detain Petitioner.   Finally, Petitioner fails to assert how Colo. Rev. Stats.
§§ 16-4-103 (concerning the setting and selection of type of bond) and 105 (conditions
of release on bond) are violations of Petitioner's due process rights under, and the
Equal Protection Clause of, the Fourteenth Amendment of the US. Constitution.

The irreparable harm exception to *Younger,* therefore, has not been met and
dismissal of this § 2241 Application is proper.

IV. Recommendations

Accordingly, it is

RECOMMENDED that the Application for Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2241 ECF No. 1, should be denied and this case should be dismissed with

prejudice.   It is

FURTHER RECOMMENDED that Petitioner's Renewed Motion for Temporary

Restraining Order, ECF No. 20 at 8, should be denied as moot.

DATED March 9, 2021.

BY THE COURT:

_____
Gordon P. Gallagher
United States Magistrate Judge