IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02585-GPG

KENNETH GLAD,

    Petitioner,

v.

BILL ELDER, in his official capacity as EL PASO COUNTY SHERIFF,

    Respondent.

---

**OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

    Petitioner Kenneth Glad seeks a writ of habeas corpus because he is being held in jail before trial on an unaffordable amount of money bail. This bail amount was imposed without providing Mr. Glad with safeguards required by the Constitution, including findings made by clear and convincing evidence as to why no less restrictive alternative than a full deprivation of his liberty would satisfy a compelling government interest. The Report and Recommendation filed by the Magistrate Judge in this case concludes that habeas is not warranted for three reasons: First, the Supreme Court has not held that the Constitution requires the safeguards asserted by Mr. Glad; second, the bond hearing Mr. Glad received comported with these safeguards; and third, that Mr. Glad failed to explain what more was required that the bond court failed to do. For the reasons discussed below, Mr. Glad objects to each of these conclusions of law and factual findings and with the Magistrate Judge's ultimate recommendation that his habeas petition be denied.

**I.    Petitioner Objects to the Magistrate Judge's Conclusion that the Constitution Does Not Require the Constitutional Safeguards Discussed in *United States v. Salerno*.**

    In denying Mr. Glad's petition for writ of habeas corpus, the Magistrate Judge states repeatedly that *United States v. Salerno*, 481 U.S. 739 (1987), is a case that concerned the federal

Bail Reform Act. R&R at 10 ("First, at issue in *Salerno* is the Bail Reform Act of 1984 (Act)."); *id.* at 11 ("Contrary to the petitioner's arguments in *Elliott*, just like his arguments in this case, '*Salerno* addressed, and rejected, a due process challenge to a portion of the Bail Reform Act of 1984 . . . which applies to pretrial detainees in federal criminal prosecutions . . . .'"). Mr. Glad does not dispute that in *Salerno*, the Supreme Court considered a challenge to a federal statute. But Petitioner objects to the Magistrate Judge's apparent conclusion that *Salerno* and subsequent cases say nothing about what the Constitution requires when individuals presumed innocent are deprived of their liberty in state bail hearings.

To the contrary, *Salerno* clearly sets out a general principle, applicable in all instances, about the substantive due process right to bodily liberty. Specifically, the Supreme Court recognized a "'general rule' of substantive due process that the government may not detain a person prior to a judgment of guilt in a criminal trial." *Salerno*, 481 U.S. at 749.[1] There is nothing in *Salerno*, or any other Supreme Court decision, that indicates that the fundamental right to pretrial liberty only applies to people detained under a federal statute. As the Supreme Court stated in *Bearden v. Georgia*, 461 U.S. 660 (1983)—a case that did *not* concern a federal statute—it is "impermissib[le]" to "imprison[] a defendant solely because of his lack of financial resources," *id.* at 661, and thus such detention is only allowed if the court "determines that alternatives to

---

[1] A litany of courts has recognized, as courts must, that this constitutional right to be free from pretrial detention unless that detention is necessary to serve a compelling government interest and no less restrictive alternative will suffice applies equally in state criminal proceedings. *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014); *Reem v. Hennessy*, No. 17-CV-06628-CRB, 2017 WL 6765247, at *1 (N.D. Cal. Nov. 29, 2017); *ODonnell v. Harris Cty*, 251 F. Supp. 3d 1052, 1156–57 (S.D. Tex. 2017), *aff'd*, 892 F.3d 147 (5th Cir. 2018); *Valdez-Jimenez v. Eighth Judicial Dist. Ct.*, 460 P.3d 976, 984–85 (Nev. 2020); *In re Humphrey*, 19 Cal. App. 5th 1006, 1014 (Ct. App. 2018), *review granted*, 417 P.3d 769 (Cal. 2018), *given precedential effect statewide in relevant part*, 472 P.3d 435 (Cal. 2020) (en banc); *Simpson v. Miller*, 387 P.3d 1270, 1276 (Ariz. 2017); *Brangan v. Commonwealth*, 80 N.E.3d 949, 962 (Mass. 2017).

imprisonment are not adequate in a particular situation" to serve the government's interests, *id.* at 672. In *Salerno*, after determining that a fundamental right was at issue, the Supreme Court noted that an individual could be deprived of that right in special circumstances and with adequate procedures. The Supreme Court then stated several important ways in which the Bail Reform Act was "carefully limited" to protect a criminal defendant's fundamental rights, *Salerno*, 481 U.S. at 755, including an individualized "full-blown adversary hearing," where the "Government . . . convince[s] a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community," and where there is "an identified and articulable threat to an individual or the community," *id.* at 750–51. The Court explained that these safeguards were "specifically designed to further the accuracy of" a bond court's decision regarding the likelihood of an individual's future dangerousness. *Id.* at 751. And the Court concluded broadly that "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat." *Id.*

It is true that in *Salerno*, the Supreme Court did not reach the issue of whether the procedural safeguards of the Bail Reform Act were *required* by the Constitution. But subsequent courts have concluded exactly that. In doing so, these courts relied on the traditional procedural due process analysis, as is required when one is deprived of their fundamental right to liberty, set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). This three-part balancing test considers:

> (1) the nature of "the private interest that will be affected," (2) the comparative "risk" of an "erroneous deprivation" of that interest with and without "additional or substitute procedural safeguards," and (3) the nature and magnitude of any countervailing interest in not providing "additional or substitute procedural requirement[s]."

*Turner v. Rogers*, 564 U.S. 431, 444–45 (2011) (quoting *Mathews*, 424 U.S. at 335).

Using this test, courts have concluded that the Constitution requires the following safeguards before unaffordable money bail may be set: (1) an adversarial hearing, (2) where findings are made by clear and convincing evidence, (3) with an explanation on the record of why no less restrictive alternative conditions of release will suffice, and (4) that the individual has counsel at the hearing. *See ODonnell v. Harris Cty.*, 892 F.3d 147, 159–60 (5th Cir. 2018); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 313–15 (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019); *McNeil v. Cmty. Prob. Servs., LLC*, 2019 WL 633012, at *15 (M.D. Tenn. Feb. 14, 2019), *aff'd*, 945 F.3d 991 (6th Cir. 2019); *Valdez-Jimenez*, 460 P.3d at 987–88; *In re Humphrey*, 19 Cal. App. 5th at 1035–38; *see also Turner*, 564 U.S. at 447–48; *Addington v. Texas*, 441 U.S. 418, 426, 433 (1979).

In imposing these procedural safeguards, courts have recognized that the first factor of the *Mathews* balancing test—the nature of the individual right at issue—is "particularly important" because it concerns "the right to pretrial liberty of those accused (that is, presumed innocent) of misdemeanor crimes." *ODonnell*, 892 F.3d at 159; *see also In re Humphrey*, 19 Cal. App. 5th at 1037 ("[A]n arrestee's pretrial liberty interest, protected under the due process clause, is 'a fundamental interest second only to life itself in terms of constitutional importance.'" (citation omitted)).

And on the second *Mathews* factor—the benefit of the additional safeguards—courts have been persuaded by the Supreme Court's conclusion in *Salerno* that the procedural safeguards of a right to counsel; an opportunity to testify, present evidence, and cross-examine witnesses; use of the clear-and-convincing-evidence standard; and a requirement that the judicial officer provide on-the-record findings of fact and reasons for detention are all "valuable" and were "'specifically

4

designed to further the accuracy of th[e] determination' of 'the likelihood of future dangerousness.'" *Caliste*, 329 F. Supp. 3d at 311 (quoting *Salerno*, 481 U.S. at 751–52); *see also McNeil*, 2019 WL 633012, at *15 (concluding that a body of federal case law supported the conclusion that a bail system is "constitutionally deficient" unless it "provide[s] notice and an opportunity for the arrestee to be heard," and "oral or written findings regarding the arrestee's ability to pay, alternative conditions of release, and the need for . . . detention"). Courts have found further support for the critical importance of these safeguards in other Supreme Court precedents. In *Caliste*, a federal court concluded that notice, an opportunity to be heard, and express findings made by the bond court on the record were all required by the Supreme Court's decision in *Turner v. Rogers*. *Caliste*, 329 F. Supp. 3d at 311–12, 314. Similarly, the California Court of Appeal highlighted the importance of "express findings and statements of decision," which were identified in *Salerno* and emphasized in *Turner*, because such on-the-record findings "ensur[e] that orders for release on bail do not become de facto detention orders." *In re Humphrey*, 19 Cal. App. 5th at 1037–38. Findings of fact and reasons of decision made on the record "help to assure a realistic review by providing a method of evaluating a judge's decision or order; they guard against careless decision making by encouraging the trial judge to express the grounds for his decision; and they preserve public confidence in the fairness of the judicial process." *Id.* at 1038 (citation omitted). And the Nevada Supreme Court determined just last year that "to ensure the accuracy of the court's bail assessment and to comport with procedural due process, additional procedural safeguards," including a hearing where a judge made findings on the record by clear and convincing evidence that no less restrictive alternative to incarceration would satisfy the state's interest in community safety, were necessary "before bail may be set in an amount that results in continued detention." *Valdez-Jimenez*, 460 P.3d at 987.

5

Finally, the third *Mathews* factor—the state's countervailing interest—has been repeatedly held not to outweigh the need for accurate bail determinations. Specifically, while the state has an interest in the efficiency of bond hearings, that interest is insufficient to overcome the need for procedural protections to guard against an erroneous deprivation of an individual's right to liberty pending trial. And courts have emphasized in particular that the interest in efficiency does not undermine the need for courts to make individualized, on-the-record findings concerning alternatives to incarceration. *ODonnell*, 892 F.3d at 159–60 (concluding that the state's interest in efficient bail hearings was sufficiently great to prevent requiring findings to be made in writing but was not great enough to prevent "requiring magistrates to specifically enunciate their individualized, case-specific reasons" as to why "a secured financial condition is the only reasonable way to assure the arrestee's appearance at hearings and law-abiding behavior before trial"); *Caliste*, 329 F. Supp. 3d at 312 (emphasizing that any countervailing interest could not overcome the need for judges to make findings regarding why "alternative measures prior to imprisonment" would be insufficient).

The Report and Recommendation issued by the Magistrate Judge contains no analysis supporting its conclusion beyond stating that *Salerno* was only about a federal statute. It does not address the broad fundamental liberty interest identified in *Salerno*, subsequent cases interpreting *Salerno*, or the fact that the safeguards identified by *Salerno* (which were lacking when Mr. Glad was deprived of his liberty) are required by the well-established test for determining what procedural due process requires. As a result, the Report and Recommendation's conclusion that *Salerno* is inapplicable and the apparent conclusion that the procedures identified in *Salerno* are not required by the Constitution are invalid.

**II. Petitioner Objects to the Magistrate Judge's Findings that Mr. Glad Received a Constitutionally Compliant Bond Hearing.**

The Magistrate Judge's Report and Recommendation quotes an extensive section of the bail hearing that Mr. Glad received in the state court and concludes that "sufficient evidence was presented and considered by the bond court to support its decision." R&R at 17. This finding ignores two crucial failures in Mr. Glad's bail hearing that Petitioner has extensively discussed in his prior briefing. Pet. Reply, Dkt. No. 20, at 8–9; Pet. Reply to DA, Dkt. No. 27, at 2, 6–7.

First, the judge at Mr. Glad's bail hearing clearly did not make any findings on the record, either at the hearing or in writing, as to why less restrictive alternatives to detention were insufficient. In particular, Mr. Glad's attorney proposed a specific alternative that Mr. Glad be given a $25,000 bond, be kept on house arrest, and be given an ankle monitor to monitor his location. R&R at 16. But the state court did not give a single reason why this alternative would be insufficient to satisfy a compelling state interest in public safety. The need to expressly consider less restrictive alternatives to confinement is required by the Due Process Clause both as a matter of substantive due process and as a matter of procedural due process. *Lopez-Valenzuela*, 770 F.3d at 784–88; *ODonnell*, 892 F.3d at 159–60; *Valdez-Jimenez*, 460 P.3d at 987–88; *In re Humphrey*, 19 Cal. App. 5th at 1035–38; *Simpson*, 387 P.3d at 1278. In his Report and Recommendation, the Magistrate Judge even notes that the state court "heard argument from defense counsel . . . that a $25,000 bond with ankle monitoring and the conditions if necessary, that he stay in his home . . . would be the least restrictive means for ensuring public safety." R&R at 17. But the Magistrate Judge does not suggest that the state court made any findings, much less on the record, that explained why this less restrictive alternative would be insufficient. The state court's failure to make findings about less restrictive alternatives alone warrants a grant of Mr. Glad's petition for writ of habeas corpus so that he may receive a constitutionally compliant bond hearing in the state court. And the Report and Recommendation's failure to acknowledge the state court's mistake

7

prevents this Court from adopting the Magistrate Judge's findings and conclusion regarding the sufficiency of Mr. Glad's bond hearing.

Second, the Report and Recommendation faults Mr. Glad for not explaining "what explicitly is required of a state bond court to set forth as clear and convincing evidence." R&R 17. But that is not the case. Mr. Glad has explained at least two ways in which the clear and convincing evidence standard was not properly applied in his state bond hearing. First, the trial court did not state what standard of evidence it was applying at all. As a result, no reviewing court can know whether *even the bond judge herself* thought the evidence presented satisfied the clear and convincing standard rather than some lower evidentiary standard. Second, the judge at the bail hearing did not state what evidence she was relying on when making each of her findings and why that evidence was sufficient. Both of these infirmities in the hearing violated Mr. Glad's procedural due process rights. And, contrary to what the Report and Recommendation says, both issues were identified by Mr. Glad in his briefs. *See* Pet. Reply, Dkt. No. 20, at 8–9 (faulting bond court for not "indicat[ing] what evidence it was crediting," and for not stating "what evidentiary standard the court was using in making its determination"); Pet. Reply to DA, Dkt. No. 27, at 1–2 (noting that a court "must cite the evidence it relies on and apply the clear and convincing evidence standard"); *id.* at 6 ("[T]he bond judge did not articulate the evidentiary standard that she was relying on or explain how each of her findings was supported by clear and convincing evidence in the record.").

The Report and Recommendation also separately makes a finding that "the factors set forth by Congress under § 3142(g) [were] at issue and considered by the bond court judge" in this case. R&R at 11. In other words, it appears that the Report and Recommendation found the bond court's decision constitutionally sufficient because it considered the detention factors that were also

8

contained in the Bail Reform Act at issue in *Salerno*, including "the nature and seriousness of the charges, the substantiality of the Government's evidence against the arrestee, the arrestee's background and characteristics, and the nature and seriousness of the danger posed by the suspect's release." *Salerno*, 481 U.S. at 742–43. This is true but irrelevant. Mr. Glad does not assert that the bond court simply considered the wrong factors (such as, for example, failing to consider his ability to pay or basing its bond determination on his race, religion, or another protected class). Instead, Mr. Glad's constitutional challenge is about the *procedures used* in considering those bond factors, including the standard of evidence that applies, whether the court stated what evidence it was crediting, and whether the bond court considered less restrictive alternatives and explained why they were insufficient before depriving Mr. Glad of his fundamental right to pretrial liberty. Because Mr. Glad was not given the proper procedural safeguards in his bond determination, his detention contravenes the Due Process Clause.

Because the record clearly demonstrates that the judge at Mr. Glad's bond hearing did not a) state what standard of evidence she was applying, b) state what evidence she was crediting and relying on to make her factual findings, and c) provide any explanation whatsoever about why the less restrictive alternative set of bond conditions raised by Mr. Glad's counsel was inadequate, it cannot be said that Mr. Glad's bond hearing was constitutionally sufficient. Mr. Glad therefore objects to the Report and Recommendation's finding that he received a sufficient bond hearing.

### III.  Petitioner Objects to an Errant Statement Regarding *Younger* Abstention.

For the reasons stated above, this Court should not adopt the factual findings and legal conclusions in the Report and Recommendation entered in this case. However, if the Court does adopt the Report and Recommendation, it should nevertheless strike a statement from that Report that appears to have been written in error and makes the basis for the court's decision unclear.

9

In his Report and Recommendation, the Magistrate Judge concludes as a threshold matter that *Younger* abstention is unwarranted in this case for two reasons. First, he explains that the factors required to apply *Younger* are not met: there are no ongoing state proceedings implicated by this habeas petition because the issue challenged in the petition is collateral to Mr. Glad's criminal trial. R&R at 6–8. Second, the Magistrate Judge further concludes that even if all three of the *Younger* factors were satisfied, an exception to *Younger* abstention for irreparable harm would likely apply based on the Tenth Circuit's decision in *Winn v. Cook*, 945 F.3d 1253 (10th Cir. 2019). R&R at 8–9. Mr. Glad agrees with all of the Magistrate Judge's well-reasoned analysis on the issue of *Younger* abstention and believes it is quite clear that the Magistrate Judge found *Younger* abstention inapplicable to the current case.

However, notwithstanding this analysis, the Report and Recommendation includes a sentence at page 17: "The irreparable harm exception to *Younger*, therefore, has not been met and dismissal of this § 2241 Application is proper." This sentence appears to be an error and its conclusion is belied by several pages of analysis as to why the irreparable harm exception to *Younger* applies (R&R at 8–9) and why Mr. Glad need not even satisfy an exception to *Younger* because the *Younger* factors are not satisfied in the first place (R&R at 6–8). In order to ensure that this Court clearly and unambiguously states the reasons for its decision, Petitioner requests that this line from the Report and Recommendation be deleted if any part of the Report is adopted by the Court.

## CONCLUSION

For the foregoing reasons, Petitioner objects to the recommendation that his Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Dkt. No. 1, be denied and the case dismissed with prejudice. Specifically, Petitioner objects to (1) the Report and Recommendation's

apparent legal conclusion that the Constitution does not require procedural safeguards including findings on the record by clear and convincing evidence and an explanation of why less restrictive alternatives are insufficient; (2) the Report and Recommendation's finding that Petitioner received a constitutionally sufficient hearing despite the state court's failure to identify the standard of evidence it was applying, state what evidence it relied on in making each of its findings, and explain on the record whether and why it found less restrictive alternatives to detention insufficient to protect a compelling government interest; (3) the Report and Recommendation's finding that Petitioner did not clearly state the constitutional infirmities in the state bond hearing in his briefing, and (4) an erroneous statement in the Report and Recommendation regarding the applicability of the irreparable harm exception to *Younger* abstention.

Respectfully submitted this 23 day of March, 2021.

/s/ Adam Mueller
Adam Mueller
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, Colorado 80203
amueller@hmflaw.com
(303) 831-7364


Eric Halperin
(DC Bar No. 491199)
Alexandria Twinem
(DC Bar No. 1644851)
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, DC 20009
eric@civilrightscorps.org
alexandria@civilrightscorps.org
(202) 670-4809


*Attorneys for Kenneth Glad*

**Certificate of Service**

I certify that on March 23, 2021, I electronically filed the foregoing *Objections to the Magistrate Judge's Report and Recommendation* with the Clerk of Court using the CM/ECF system.

*s/ Adam Mueller*